# 16-3140-cv

# United States Court of Appeals
## for the
## Second Circuit

———◆❘◆———

ALANA SHULTZ,

*Plaintiff-Appellant,*

— v. —

CONGREGATION SHEARITH ISRAEL of the City of New York, THE SPANISH
AND PORTUGESE SYNAGOGUE, MEIR SOLOVEICHIK, In his personal and
professional capacities, MICHAEL LUSTIG, In his personal and professional capacities,
BARBARA REISS, In her personal and professional capacities,

*Defendants-Appellees.*

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue
New York, New York 10003
(212) 257-6800

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE CASE ...............................................................1

STATEMENT OF JURISDICTION......................................................5

STANDARD OF REVIEW ...................................................................5

STATEMENT OF ISSUES ...................................................................6

STATEMENT OF FACTS .....................................................................6

ARGUMENT ......................................................................................10

I.  THE DISTRICT COURT ERRED BY MAKING A FACTUAL
    DETERMINATION THAT DEFENDANTS MADE A *BONA FIDE*,
    GOOD FAITH REINSTATEMENT OFFER THAT RESCINDED
    SHULTZ'S TERMINATION........................................................10

   A.  The District Court Misapplied the Standard for Judging the
       Sufficiency of a Complaint ................................................10

   B.  The District Court Erred By Making a Factual Determination That
       Shultz's Termination Was Rescinded ..................................12

      1.  Relevant Case Law...................................................13

      2.  The District Court Ignored Numerous Facts Suggesting
          Discriminatory Motive and Reasonable Rejection of the
          Reoffer...................................................................19

      3.  The District Court Ignored the Allegations of Pregnancy Bias
          and Prejudice When It Held that Shultz Was Unconditionally
          Restored to Her Position ..........................................23

      4.  Allegations Showing Temporal Proximity ................26

i

II.     THE DISTRICT COURT ERRED IN NOT FINDING THAT THE COMPLAINT ALLEGED A HOSTILE WORK ENVIRONMENT CLAIM .................................................................................... 27

     A.    Allegations in Support of a Hostile Environment ............................... 29

     B.    The District Court Erred In Not Determining Whether the Allegations Stated a Hostile Work Environment Claim ......................................... 30

III.    THE DISTRICT COURT ERRED WHEN IT DISMISSED SHULTZ'S CONSTRUCTIVE DISCHARGE CLAIM .................................................... 31

     A.    Any Reasonable Employee In Shultz's Position Would Have Felt Compelled to Resign .......................................................................... 33

     B.    The District Court Relied on Distinguishable Case Law ................... 35

IV.    THE DISTRICT COURT ERRED IN FINDING THAT THE COMPLAINT FAILED TO ALLEGE FACTS GIVING RISE TO A PLAUSIBLE MINIMAL INFERENCE OF RETALIATION ............................................. 36

     A.    Retaliation Through August 14, 2015 ................................................. 37

     B.    Retaliation After Shultz Commenced Litigation ............................... 38

V.     AMENDING THE COMPLAINT .............................................................. 39

CONCLUSION .................................................................................................... 41

# TABLE OF AUTHORITIES

## Cases

Albemarle Paper Co. v. Moody,
    422 U.S. 405 (1975)..................................................................................14

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................40

Borum v. Illinois Cent. R.R., Co.,
    13-CV-12421, 2014 WL 3845938 (E.D. Mich. Aug. 5, 2014) ....................31

Briggs v. Women in Need, Inc.,
    819 F. Supp. 2d 119 (E.D.N.Y.  2011)........................................................26

Brightman v. Prison Health Services, Inc.,
    62 A.D.3d 472 (1st Dep't 2009)..................................................................37

Brown v. Alabama Dept. of Transp.,
    597 F.3d 1160, 1183 (11th Cir. 2010) .........................................................15

Bruno v. W.B. Saunders Co.,
    882 F.2d 760 (3d Cir. 1989) .......................................................................15

Burlington N. & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006)............................................................................... 37, 38

Butler v. Potter,
    06-CV-3828(JFB)(WDW), 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009)....31

CBS, Inc. v. Bruno,
    493 U.S. 1062 (1990)..................................................................................15

Cheshire v. Paulson,
    04-CV-3884(FB)(LB), 2007 WL 1703180 (E.D.N.Y. June 12, 2007).........31

Claiborne v. Illinois Central Railroad,
    583 F.2d 143 (5th Cir. 1978) ......................................................................16

Dawson v. N.Y. City Transit Auth.,
    624 F. App'x 763 (2d Cir. 2015) ................................................................... 11

De La Pena v. Metro. Life Ins. Co.,
    953 F. Supp. 2d 393 (E.D.N.Y. 2013) ......................................................... 36

DeMarco v. Holy Cross High School,
    4 F.3d 166 (2d Cir. 1993) ............................................................................ 25

Doe v. Columbia University,
    831 F.3d 46 (2d Cir. 2016) ............................................................... 4, 23, 31

Donovan v. Commercial Sewing, Inc.,
    562 F. Supp. 548 (D. Conn. 1982) ............................................................... 16

Dowrich-Weeks v. Cooper Square Realty, Inc.,
    11-CV-5966(DAB), 2012 WL 3826981 (S.D.N.Y. Sept. 4, 2012) ............... 35

EEOC v. Kallir, Philips, Ross Inc.,
    420 F. Supp. 919 (S.D.N.Y. 1976) .............................................................. 29

EEOC v. Prudential Fed. Sav. and Loan Ass'n,
    763 F.2d 1166 (10th Cir. 1985) ................................................................... 30

Feingold v. New York,
    366 F.3d 138 (2d Cir. 2004) ........................................................................ 28

Fiedler v. Indianhead Truck Line,
    670 F.2d 806 (8th Cir. 1982) .................................................... 14, 15, 16, 17

Fitzgerald v. Henderson,
    251 F.3d 345 (2d Cir. 2001) ........................................................................ 32

Ford Motor Co. v. EEOC,
    458 U.S. 219 (1982) .................................................................. 13, 14, 15, 17

Forrest v. Jewish Guild for the Blind,
    3 N.Y.3d 295 (2004) .................................................................................... 37

iv

Ganzy v. Allen Christian Sch.,
    995 F. Supp. 340 (E.D.N.Y.1998) ..................................................25

Giudice v. Red Robin Int'l, Inc.,
    555 Fed. App'x 67 (2d Cir. 2014) .................................................37

Goodman v. Archbishop Curley High School, Inc.,
    149 F. Supp. 3d 577 (D. Md. 2016)................................................25

Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.,
    252 F.3d 545 (2d Cir. 2001) ................................................... 26, 27

Green v. Brennan,
    136 S. Ct. 1769 (2016)............................................................ 28, 31

Guruswamy v. Marsh & Mclennan Cos., Inc.,
    13-CV-7598(LTS)(GWG), 2016 WL 3248496 (S.D.N.Y. June 10,
    2016) ................................................................................................23

Henry Wilson v. Consol. Edison Co. of New York, Inc.,
    96-CV-7546(RCC), 2000 WL 335733 (S.D.N.Y. Mar. 30, 2000)...............31

Hitt v. Connell,
    301 F.3d 240 (5th Cir. 2002) ........................................................31

Howley v. Town of Stratford,
    217 F.3d 141 (2d Cir. 2000) .........................................................28

Imperial Diner, Inc. v. State Human Rights Appeal Bd.,
    52 N.Y.2d 72 (1980)......................................................................32

Incarnato v. Tops Friendly Markets, LLC.,
    04-CV-6500T, 2006 WL 1330103 (W.D.N.Y. May 15, 2006)....................31

Kassman v. KPMG LLP,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ...................................... 32, 33

Keeton v. Flying J, Inc.,
    429 F.3d 259 (6th Cir. 2005) ........................................................31

Kelly v. Chase Manhattan Bank,
    717 F. Supp. 227 (S.D.N.Y. 1989) ...................................................29

Lightfoot v. Union Carbide Corp.,
    110 F.3d 898 (2d Cir. 1997) .........................................................16

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015) ................................................... 11, 41

Manners v. New York State Dept. of Envtl. Conservation,
    14-CV-810(MAD)(TWD), 2015 WL 4276465 (N.D.N.Y. July 14, 2015)...33

Mathieu v. Gopher News Co.,
    273 F.3d 769 (8th Cir. 2001) .........................................................18

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)........................................................... 11, 25

Miano v. AC&R Advertising Inc.,
    875 F. Supp. 204 (S.D.N.Y. 1995) ........................................... 17, 18

Mohamed v. NYU,
    14-CV-8373(GBD)(MHD), 2015 WL 3387218 (S.D.N.Y. May 21,
    2015) ...................................................................................35

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007) .........................................................32

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir. 2004) .........................................................33

Pierce v. F.R. Tripler & Co.,
    955 F.2d 820 (2d Cir. 1992) ............................................. 14, 15, 17

Raspardo v. Carlone,
    770 F.3d 97 (2d Cir. 2014) ..........................................................28

Redhead v. Conference of Seventh-Day Adventists,
    440 F. Supp. 2d 211 (E.D.N.Y. 2006)...........................................25

vi

Redhead v. Conference of Seventh-Day Adventists,
    556 F. Supp. 2d 125 (E.D.N.Y. 2008)...........................................................25

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
    743 F.3d 11 (2d Cir. 2014) ...........................................................................27

Robinson v. Gucci Am.,
    11-CV-3742(JPO), 2012 WL 259409 (S.D.N.Y. Jan. 27, 2012) .................25

Santiesteban v. Nestle Waters N. Am., Inc.,
    61 F. Supp. 3d 221 (E.D.N.Y. 2014) ...........................................................31

Stanfield v. Answering Serv. Inc.,
    867 F.2d 1290 (11th Cir. 1989) ...................................................................15

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)......................................................................................39

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) .........................................................................19

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003) .........................................................................28

Ticali v. R.C. Diocese of Brooklyn,
    41 F. Supp. 2d 249 (E.D.N.Y. 1999) ...........................................................31

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ................................................................... 22, 36

Vinson v City of New York,
    04-CV- 7769(JGK), 2007 WL 965338 (S.D.N.Y. Mar. 30, 2007) ..............28

Wanamaker v. Columbian Rope Co.,
    108 F.3d 462 (2d Cir. 1995) ............................................................ 23, 32, 39

Wanamaker v. Columbian Rope Co.,
    907 F. Supp. 522 (N.D.N.Y. 1995) ..............................................................31

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000) ...........................................................................28

White v. N. Y. City Dept. of Educ.,
    12-CV-1376(CM), 2014 WL 1273770 (S.D.N.Y. Mar. 28, 2014) ...............28

## **Other Authorities**

28 U.S.C. § 1291 .........................................................................................5

28 U.S.C. § 1331 .........................................................................................5

42 U.S.C. § 2000e *et seq.* ................................................................. 10, 36

Fed. R. Civ. P. 8(a)............................................................................ 12, 41

Fed. R. Civ. P. 12(b)(6)................................................................... *passim*

Fed. R. Civ. P. 56 ........................................................................... 15, 31

## PRELIMINARY STATEMENT

Plaintiff-Appellant Alana Shultz ("Shultz") respectfully submits this brief in support of her appeal of the August 15, 2016 Order of U.S. District Court Judge J. Paul Oetken of the Southern District of New York dismissing her federal claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family Medical Leave Act ("FMLA") and granting the Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss by Defendants-Appellees Congregation Shearith Israel of the City of New York, the Spanish and Portuguese Synagogue ("Congregation"), Meir Soloveichik ("Rabbi Soloveichik"), Michael Lustig ("Lustig"), and Barbara Reiss ("Reiss") (collectively, "Defendants-Appellees," "Defendants" or "Congregation").

## STATEMENT OF THE CASE

On September 22, 2015, Shultz commenced this action against the Congregation to hold her former employer accountable for its unlawful discrimination based on her gender and pregnancy and retaliation for her protected complaints. Just *days* after learning that Shultz was pregnant, the Congregation terminated their eleven-year employee without warning. Leaders of the Congregation adhere to Orthodox religious teachings that discourage sexual intercourse prior to marriage. After Defendants Soloveichik, Lustig and Reiss learned that Shultz was more than 16 weeks pregnant at the time of her wedding,

1

they told Shultz that the Congregation was "restructuring," and as a result, her position was "eliminated." Although Shultz was one of the longest tenured employees and intimately involved in the synagogue's operation, this was the first time she heard about a "restructuring."

Defendants fired Shultz on July 21, 2015, but told her that she must continue working through August 14, 2015, in order for her to perform as much work as possible before September's Jewish holidays. After the July 21st termination, Shultz retained counsel who sent a detailed letter to the Congregation placing it on notice that their conduct constituted pregnancy discrimination in violation of city, state and federal discrimination laws. Several days later, on August 5, 2015, Shultz received a three-sentence letter that read, "The Congregation has reevaluated its plans to eliminate your position as Program Director, and hereby rescinds its termination of your employment" (the "Reoffer letter"). (A-19).

Based on the Congregation's discriminatory conduct that began on July 21, 2015 and continued unabated even after she received the Reoffer letter, Shultz rejected the attempted reinstatement. Shultz alleged that the Reoffer letter was a disingenuous litigation tactic, made in bad faith and that it did nothing to stop Defendants' continued pregnancy discrimination. Defendants refused to accept Shultz's rejection and claimed that Shultz had no choice but to accept reinstatement because Defendants alleged they would continue to provide Shultz

2

the same salary, benefits and job title. Shultz was under no legal obligation to accept the bogus rescission ploy, however, and under the circumstances of this case, she reasonably rejected the reoffer while maintaining her right to assert discrimination claims pursuant to Title VII.

As alleged, the Reoffer letter failed to vitiate the discriminatory termination and Defendants' biased conduct resulted in a material alteration of her job such that the employment relationship was damaged irreparably, making it impossible for her to successfully perform her job. Specifically, based on the circumstances surrounding her termination, it was impossible for Shultz to return to work in the "same position" because that job, as she previously performed it, no longer existed. The individual Defendants who fired her based on her pregnancy were the same persons to whom Shultz directly reported and worked closely with on a daily basis. After learning she was pregnant, these same individual Defendants shunned, isolated and greatly limited their communications with Shultz. Because Shultz relied on communications from Defendant Reiss and the Rabbis about her assignments, direction and supervision, such conduct materially and adversely affected her job and the ability to perform. Further, their transparent hostility created friction and distrust at the workplace and conveyed a strong message to Shultz that Defendants wanted her gone. Within this orthodox community, Shultz's status and regard among members of the Congregation was forever

3

damaged when the head Rabbi, executive director and members of the Board openly expressed their prejudice and animus towards Shultz because she was pregnant.

Defendants' blatant discrimination continued subsequent to the Reoffer letter and Shultz's working conditions were such that a reasonable person in her position would have felt compelled to resign. As intended by Defendants all along, Shultz's last day at the Congregation was August 14, 2015.

Consistent with Rule 8(a), the Complaint[1] set forth a concise statement of facts that alleged that the Reoffer letter was a sham, made in bad faith and that at all times Defendants intended that Shultz's last day would be August 14, 2015. Detailing much more than a "short, plain" set of facts, the Complaint established why, within the context of her work environment and pregnancy, it was reasonable for Shultz to believe that the employer-employee relationship was damaged irreparably, making reinstatement impossible, and leading to her discharge.

Contrary to this Court's recent holding in Doe v. Columbia University, 831 F.3d 46 (2d Cir. 2016), the District Court improperly denied Shultz the opportunity to seek discovery about Defendants' conduct and obtain evidence to show that she

---

[1] The action was commenced on September 22, 2015. An amended complaint was filed on November 16, 2016 that added claims based on continuing and further retaliation, and for defamation. (Dkt. No. 21). Following the issuance of a right to sue notice by the EEOC, Shultz amended the complaint on March 10, 2016 to include Title VII causes of action. All references to the "Complaint" refer to the third amended complaint. (A-26-56).

suffered adverse employment actions.  Ignoring the applicable law, the District Court held that no adverse employment action took place in connection with her termination because the Reoffer letter unconditionally restored Shultz to her job and vitiated her claim for discrimination under Title VII.  (A-103-04).  The District Court granted the Congregation's motion to dismiss all federal claims and dismissed without prejudice the state and city claims because it declined to exercise supplemental jurisdiction.  (A-112).   In so ruling, the District Court committed reversible error.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court's jurisdiction is based upon 28 U.S.C. § 1291, as an appeal from a final decision of the District Court entered on August 15, 2016.  (A-93).  The decision granted Defendants-Appellees' motion for dismissal in its entirety.   (A-112).  Plaintiff's Notice of Appeal was filed timely on September 9, 2016.  (A-114).

## STANDARD OF REVIEW

A court of appeals reviews *de novo* a district court's grant of a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim upon which relief can be granted.  Doe, 831 F.3d at 53.

## STATEMENT OF ISSUES

I.   Whether the lower court erred in granting Defendants-Appellees' motion to dismiss all federal claims pursuant to Rule 12(b)(6).

II.  Whether the lower court erred in determining at the motion to dismiss stage that Defendants-Appellees' attempt to rescind Shultz's termination as a matter of law remedied their prior and continuing pregnancy discrimination.

III. Whether the lower court erred in dismissing all federal claims because it held that Shultz failed to allege that the attempted reinstatement was not *bona fide* or made in bad faith, and the Complaint failed to allege other actionable adverse employment action.

## STATEMENT OF FACTS

In 2004, Shultz started working at the Congregation as its full-time Program Director. (A-31). Shultz was responsible for planning and coordinating events, such as dinners, musical performances and holiday celebrations. (Id.). Additionally, Shultz helped organize the enrollment and scheduling of the Congregation's nursery school program and after-school youth activities. (Id.). During her eleven-year tenure, Shultz consistently received positive performance reviews and was a passionate and dedicated employee. (A-31, 34). In 2012, the Congregation hired Defendants Soloveichik and Reiss. (A-31-32). At all relevant times, Shultz was supervised by and reported to the Congregation's four Rabbis,

including Defendant Soloveichik, the head Rabbi; the executive director, Defendant Reiss; and the Board of Trustees ("Board"). She received assignments, direction and supervision from her supervisors and daily communication was critical and necessary in order for her to perform her job. (A-30-31).

On June 28, 2015, Shultz and her husband were married. (A-35). Unbeknownst to the Rabbis, Reiss or Board members, Shultz was pregnant at the time she was married. (Id.). On July 21, 2015, when Shultz returned to work after her honeymoon, she and Defendant Reiss spoke in detail about her pregnancy. (A-35). Later that *same day*, Shultz was summoned to meet with Defendants Reiss, Soloveichik and Lustig. (A-30-31, A-35). At this meeting, Defendant Reiss explained that the Congregation was "eliminating" her position and no longer needed Shultz because it was "restructuring." (A-36). No explanation was provided for eliminating the position she had filled for eleven years and this was the first Shultz had heard of the "restructuring." (Id.). At the time of this meeting, Shultz was one of the longest tenured employees at the Congregation. (A-34).

At this termination meeting, Shultz was handed a prepared severance agreement offering her six weeks of pay. (A-69). Although fired, Shultz was told that she must work through August 14, 2015 given the amount of work Defendants still needed her to do before September, including nursery school registration, after-school registration and preparing for Yom Kippur. (A-37). As alleged, Shultz

7

knew that Defendants considered her morally unfit to continue working there based on her pregnancy. In an effort to convey his disgust and to humiliate her, Defendant Soloveichik refused to look at or speak to Shultz during the meeting. Similarly, Defendant Lustig refused to speak or respond to Shultz's questions, forcing Defendant Reiss to look at and address Shultz. (A-35-36). Shultz expressed her fears about securing new work while visibly pregnant and how critical it was for her to continue medical insurance. (A-36). Defendants responded to Shultz's concerns with silence. (Id.).

Following the termination, Shultz retained legal counsel who sent the Congregation a letter that detailed its position on the Congregation's discriminatory conduct. *Just days later*, on August 5, 2015, Defendant Reiss sent Shultz a three sentence letter that said the Congregation rescinded her "termination" and "reinstated" her to the position of Program Director, the same position that Defendants claimed they must eliminate due to a "restructuring." (A-19, 38). Defendants failed to clarify why the Congregation's restructuring was no longer "necessary" or why her position's imminent elimination was aborted. (Id.). Indeed, Defendants provided no explanation about the present or future organizational plans, including that of Program Director, leaving Shultz to perceive she was in a precarious, unsecure position. (A-38-40). Defendants also did nothing to quell the claim that her termination was related to her pregnancy. (Id.).

8

Thereafter, Defendants continued to exhibit their animosity towards Shultz by disparaging and refusing to speak to her. (A-38-39). Shultz was no longer in the same position as before her pregnancy was disclosed because Shultz's supervisors ostracized her, shamed her and openly displayed their wish that she leave – actions that materially and adversely affected the job and Shultz's ability to perform. (A-35-40). Evidence of their hostility, animus and distrust of Shultz was provided daily through their shunning and through Defendant Reiss's unabashed efforts to extract from Shultz the most amount of work as possible before her last day on August 14, 2015. (A-38-40). Defendant Reiss was frantically trying to assign Shultz's responsibilities to others before she left. (A-40).

The hostility and shaming created extreme stress and tension for Shultz such that reporting to work became intolerable for her. (Id.). Moreover, at some point after the decision to fire Shultz was made, her name and listing as a staff member was removed from the monthly online newsletter that is emailed to over 500 families. (A-39). Further, Defendants removed Shultz's name from the short list of staff names set forth on a plaque outside the entrance to the synagogue. (A-39). As detailed *infra*, through the Congregation's continuous discriminatory and retaliatory conduct, Shultz was constructively discharged on August 14, 2015. (A-39-40).

Shortly after this action was filed, the Complaint was amended to include claims of retaliation and defamation following the Congregation's email blast that accused Shultz of, *inter alia*: (i) "fabricating" her claims; (ii) lying about the status of her employment; (iii) falsely claiming that Shultz had been "paid every penny" due since August 14, 2015; and that (iv) Shultz sacrilegiously commenced this action on the eve of Yom Kippur. (A-41; see also Dkt. No. 21). After the Congregation ruthlessly embarked on a public campaign to retaliate against Shultz further (A-41-43), Shultz was forced to seek judicial intervention and filed a motion for a temporary restraining order.[2] (A-9-11, 84-85).

## **ARGUMENT**

### I. THE DISTRICT COURT ERRED BY MAKING A FACTUAL DETERMINATION THAT DEFENDANTS MADE A *BONA FIDE*, GOOD FAITH REINSTATEMENT OFFER THAT RESCINDED SHULTZ'S TERMINATION

#### A. The District Court Misapplied the Standard for Judging the Sufficiency of a Complaint

In cases alleging employment discrimination in violation of Title VII, "until the defendant furnishes a nondiscriminatory reason for the adverse action it took against the plaintiff, the plaintiff needs to present only minimal evidence supporting an inference of discrimination in order to prevail." 42 U.S.C. §§ 2000e to 2000e-15 (1970), as amended, 42 U.S.C. §§ 2000e to 2000e-17; Doe, 831 F.3d

---

[2] Shultz's motion for a preliminary injunction and the subsequent filings and arguments were not part of the motion to dismiss decision. (A-9-11, 96).

at 53-54 (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)). In

<u>Doe</u>, this Court emphasized this lenient pleading standard, recently detailed in

<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 307-08 (2d Cir. 2015):

> In <u>Littlejohn</u>, we clarified that <u>Iqbal</u> applies to employment-discrimination complaints brought under Title VII. To the same extent that the <u>McDonnell Douglas</u> temporary presumption reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under <u>Iqbal.</u> Because [t]he discrimination complaint, by definition, occurs in the first stage of the litigation . . . the complaint also benefits from the temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent.
>
> ***
>
> In other words, at the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the plaintiff to the temporary presumption of <u>McDonnell Douglas</u> until the defendant furnishes its asserted reasons for its action against the plaintiff.

<u>Doe</u>, 831 F.3d at 54 (citations and quotations omitted). This Court further

explained that "for this reason, we have often vacated 12(b)(6) and 12(c)

dismissals of complaints alleging discrimination." <u>Id.</u>, n.8 (citations and

quotations omitted); <u>see also</u> <u>Dawson v. N.Y. City Transit Auth.</u>, 624 F. App'x 763,

770 (2d Cir. 2015) ("At the pleading stage, district courts would do well to

remember this exceedingly low burden that discrimination plaintiffs face.").

Notably, this Court's precedent requires that:

> The role of the court at this [Rule 12(b)(6)] stage of the proceedings *is not in any way to evaluate the truth as to what really happened*, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed.

<u>Doe</u>, 831 F.3d at 59 (emphasis added).  Here, the District Court framed its analysis of the allegations in order to "evaluate the truth as to what happened," rather than determine whether the Complaint satisfied Rule 8(a).  In so doing, the District Court imposed "too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage."  <u>Id.</u> at 55 n.8.

### B.    The District Court Erred By Making a Factual Determination That Shultz's Termination Was Rescinded

The District Court held that Shultz failed to plead an actionable adverse employment action in connection with her termination because it concluded that the Reoffer letter restored her unconditionally to her position and she suffered no "lasting 'adverse consequences'" from the termination.  (A-102).  Without *any* explanation as to how it factually determined that the Reoffer letter was "unconditional," the District Court simply concluded that Defendants were under no obligation to extend the offer because they "sincerely" wanted to reinstate Shultz.  (A-105).  The District Court further made a factual determination that Shultz suffered no "tangible harm" from the termination.  (A-105).  On this point, it focused on what Shultz did not allege; specifically, whether the rescission involved "a demotion evidenced by a decrease in wage or salary," or "a less

12

distinguished title," or "a material loss of benefits." (A-104). On this basis, the District Court held that the termination failed to reach the level of adverse employment action under Title VII. (A-105-06).

The District Court's analysis is wrong and inconsistent with the relevant case law. First, the District Court provided no analysis on the issue of Shultz's claim that the reoffer was not *bona fide* and was made in bad faith because it held that this was a legal conclusion. Second, it inexplicably ignored all allegations about the discriminatory motives underlying the termination decision despite ample facts showing the transparency of Defendants' prejudice against Shultz. The Reoffer letter was given to Shultz more than 14 days after she was fired and just days after her counsel sent written notice of her claims. (A-38). Regardless of whether the reoffer included the same pay and benefits, Defendants attempt to "undo" the elimination of her position does not excuse their unlawful discriminatory motives in connection with her firing, or prevent Shultz from seeking protection under Title VII.

### 1. Relevant Case Law

A victim of discrimination is not required to continue employment where a termination rescission is not *bona fide* or was made in bad-faith. In <u>Ford Motor Co. v. EEOC</u>, the Supreme Court held that when an employer makes an unconditional offer to reinstate an employee terminated as a result of

discrimination, the employee's rejection of that offer forecloses any claim for future front pay and tolls the continuing accrual of back pay liability under Title VII.  458 U.S. 219, 227 (1982).  Back pay is tolled as of the date of the employee's rejection.  Id.

The Court based its holding in Ford on the statutory duty of a Title VII complainant to mitigate damages, and the statute's underlying legislative purpose to "make the victims of unlawful discrimination whole by restoring them so far as possible . . . to a position where they would have been were it not for the unlawful discrimination."  458 U.S. at 230 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)) (internal quotation marks omitted).

Ford, however, does not prevent employees from rejecting offers of employment if "a reasonable person would refuse the offer of reinstatement." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 830 (2d Cir. 1992) (quoting Fiedler v. Indianhead Truck Line, 670 F.2d 806, 808 (8th Cir. 1982)).  Ford does not serve as a weapon for savvy employers to attempt to game the legal system by extinguishing employees' claims before judicial review.  Unfortunately, the District Court failed to incorporate the policy rationales in Ford to this case and ignored the analysis of whether Shultz alleged facts showing discriminatory motives behind her firing.

14

Although numerous courts have analyzed the same issues presented by Shultz, without explanation, the District Court does not cite to these relevant decisions. Not surprisingly, due to the fact intensive nature of these cases, the relevant decisions were rendered following Rule 56 motions for summary judgment or after trial, not on motions to dismiss. See, e.g., Pierce, 955 F.2d at 830 (citing Bruno v. W.B. Saunders Co., 882 F.2d 760, 770 (3d Cir. 1989) (whether an employee has reasonably rejected an offer is a question for the trier of fact; evidence sufficient to support jury's conclusion that offer was conditioned on release of job discrimination claim), cert. denied sub nom; CBS, Inc. v. Bruno, 493 U.S. 1062 (1990); Fiedler, 670 F.2d at 808 ("Generally it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement.").

For instance, in Brown v. Alabama Dept. of Transp., an appeal following a jury verdict, the court explained that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." 597 F.3d 1160, 1183 (11th Cir. 2010) (citing Ford., 458 U.S. at 241)). It further described "special circumstances" as including situations in which the employer's offer is not made in "good faith," or where the employee's rejection of the offer is "reasonable." Id. (quoting Stanfield v. Answering Serv. Inc., 867 F.2d 1290, 1296 (11th Cir. 1989)).

15

In <u>Lightfoot v. Union Carbide Corp.</u>, the plaintiff, a former employee alleging discrimination, appealed after the lower court granted summary judgment in favor of the employer. 110 F.3d 898, 908 (2d Cir. 1997). In <u>Lightfoot</u>, this Court analyzed the very question of whether the plaintiff had reasonably rejected an offer of reinstatement. Significantly, the Court considered it relevant whether the employer had made the reoffer in bad faith as part of a "maneuver to put [plaintiff] back under the power of defendant where he could be subjected to further harassment until a more propitious scenario for his termination could be devised." <u>Id.</u> In a similar case, <u>Donovan v. Commercial Sewing, Inc.</u>, the court analyzed the same question whether the plaintiff had reasonably rejected a reoffer of employment and whether the employer offered the reinstatement in good faith. 562 F. Supp. 548, 554–55 (D. Conn. 1982). As part of its analysis, the court in <u>Donovan</u> held:

> Failure to accept an offer of reinstatement will not automatically terminate the employer's back pay liability in every case. In determining whether the right to relief extends beyond the date of an offer of reinstatement, **the trial court must consider the circumstances under which the offer was made or rejected**, including the terms of the offer and the reasons for refusal.

562 F. Supp. at 554 (emphasis added) (citing <u>Claiborne v. Illinois Central Railroad</u>, 583 F.2d 143, 153 (5th Cir. 1978), <u>cert. denied</u>, 442 U.S. 934 (1979) (Title VII)). In <u>Fiedler</u>, following the lower court's grant of summary judgment in favor of the employer, the employee appealed, arguing that refusal of reoffer was reasonable.

16

670 F.2d at 808. The circuit court reasoned that although the relevant period for measuring back pay generally is the time between the termination and plaintiff's action upon an offer of reinstatement, where a "plaintiff's rejection of an offer of reinstatement is reasonable, then the offer does not terminate the accrual of damages." Id. As such, the court's analysis in Fiedler considered whether the plaintiff presented evidence that the offer was made in bad faith. Id. at 809. Similarly, in Pierce, this Court reasoned that, "While an unconditional offer of a job substantially similar to the one denied the plaintiff may, as a matter of law, toll back pay, the ultimate issue in a mitigation of damages question is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." 955 F.2d at 830.

In Miano v. AC&R Advertising Inc., an age discrimination case involving an attempted reinstatement, the court reasoned:

> This court cannot imagine that a principled application of the tolling rule in Ford Motor Company should reward an employer by allowing him to take advantage of that rule simply by **attempting a bogus offer of reinstatement as a litigation tactic,** i.e., for the sole purpose of cutting off a claimant's right to back pay and precluding later reinstatement or front pay. . . Such a scheme would hardly advance the goal of bringing defendants into voluntary compliance with the ADEA.

875 F. Supp. 204, 223 (S.D.N.Y. 1995) (quotations and citations omitted) (emphasis added).

17

Here, Shultz has alleged precisely the same issue as in <u>Miano</u> – specifically, she claims that Defendants made the reoffer in bad faith to favor their litigation position. (A-38). Shultz argued that the reoffer had no impact on the pattern and conduct of discrimination based on her pregnancy and in fact, the hostile environment continued to increase following the Reoffer letter. (A-38-40). Shultz further alleged that based on the close working relationships between she and Defendants, the continued animus and attempts to humiliate and isolate her resulted in placing her in a position to fail – not to perform the same job she had before her pregnancy was announced. (A-39). Notably, the court in <u>Miano</u> reached its decision only after testimony and weighing evidence at trial:

> As of the time that the reinstatement offers were made, and at the time that they were rejected, the [individuals] were all persons with whom plaintiffs would be required to work closely in the event that plaintiffs were reinstated to their former positions.

<u>Id</u>. at 218. On the issue of whether plaintiffs in <u>Miano</u> justifiably rejected reinstatement, the court considered it relevant whether supervisors could "resume prior close working relationships" with plaintiffs or whether the breakdown between them created "friction, animosity and distrust," such that plaintiffs could not be expected to return. <u>Id</u>. at 217-18; <u>see also</u> <u>Mathieu v. Gopher News Co.</u>, 273 F.3d 769, 784 (8th Cir. 2001) ("Clearly, employment marred by hostility is not substantially equivalent to an otherwise similar position in an amiable environment."). Contrary to <u>Miano</u> and the multitude of other cases that analyzed

18

substantially similar claims as presented here, the District Court never considered in depth whether Shultz properly alleged justified rejection of the Reoffer letter, labeling them mere "legal conclusions." (A-105).

Incredulously, the District Court compared Shultz's situation to a case involving an employee who received a "counseling letter" for violating safety protocols that was later rescinded. (A-103, citing Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 570 (2d Cir. 2011)). The severity of a "counseling letter" on safety issues cannot be compared to Shultz's experience of disclosing her pregnancy, being fired days later and handed a six page severance agreement and subsequently forced to endure discrimination and hostility by her supervisors for weeks.

> **2.    The District Court Ignored Numerous Facts Suggesting Discriminatory Motive and Reasonable Rejection of the Reoffer**

Far in excess of what is needed to allege a minimal plausible inference of discrimination, the Complaint sets forth numerous facts in support, including, *inter alia*:

- After eleven years of excellent performance, *days* after Defendants learned Shultz was pregnant, she was fired (A-35);

- At the termination meeting, the head of the Congregation, Defendant Soloveichik, made known his disgust in Shultz's morality and refused to even look at her (A-35-36);

- Defendant Lustig similarly refused to speak to Shultz (A-36);

19

- Prior to the termination meeting, Shultz had not heard any discussion about a planned restructuring at the synagogue (Id.);

- Defendants wanted Shultz gone and handed her at the termination meeting a six page prepared severance agreement (A-37);

- After learning she was pregnant, Defendant Soloveichik continued to display his utter disapproval and disgust towards Shultz and her status as pregnant by refusing to speak to her or acknowledge her presence (A-39-40);

- Even after sending the Reoffer letter, Defendants continued to discriminate against Shultz, and by way of example only, on August 11, 2015, Defendant Reiss, while on the telephone with Defendant Lustig, intending for Shultz to overhear, said she had "no problem having this [legal claim] out in the community" (A-38-39);

- Even after sending the Reoffer letter, Defendant Reiss told Defendant Lustig that Shultz's threatened legal action was because she was "looking for a lottery ticket," and Defendant Reiss intended for Shultz to overhear this disparaging remark (A-39);

- Even after sending the Reoffer letter, Defendant Reiss openly disparaged Shultz's lawyers with the intent that Shultz overhear (Id.);

- Defendants deliberately made disparaging remarks about Shultz and her pregnancy (A-38-39);

- Shultz knew that for the remainder of her pregnancy and through the birth of her child, she would be subjected to continued disapproval, shaming and disgust by Defendants (A-39);

- Defendant Soloveichik "intentionally refused to look at, speak to or acknowledge" Shultz during and after the termination

20

meeting, after the Reoffer letter and through her discharge (A-35-36, A-40);

- Defendant Lustig intentionally refused to look at, speak to or acknowledge" Shultz during and after the termination meeting (A-40);

- Defendants Soloveichik, Reiss and Lustig never altered their course of discriminatory conduct after the Reoffer letter and continued to act as if Shultz's last day was August 14, 2015 (A-40);

- At all times, Defendants intended Shultz's last day to be August 14, 2015 and this intent was expressed in multiple ways, including by discussing how to expedite completion of her assignments before August 14, 2015 because she was the only employee capable of handling the necessary work and by openly discussing the transition of her responsibilities to other employees as if her last day was August 14, 2015 (A-40);

- Defendants removed Shultz's name and biography from the "staff listings" in a monthly newsletter emailed to more than 500 member families (A-39);

- Defendants removed Shultz's name from the list of employees prominently displayed on the outside wall of the Congregation (A-87);

- The effective termination date was "delayed" several weeks for the convenience of Defendants – not to benefit Shultz (A-37);

- Because Shultz's supervisors were Defendants Reiss and Soloveichik and the other three Rabbis (who in turn, report to the Board), she received assignments, direction and supervision from these individuals only – therefore communication on a daily basis was critical and necessary in order for her to perform her job (A-30-31);

21

- It was reasonable for Shultz to believe that Defendants Soloveichik, Reiss and Lustig would not cease their moral repulsion of her and separate her employment position from their opinions simply because the Congregation received a detailed demand letter from Shultz's counsel that outlined her legal claims (A-39);

- Defendants, including her direct supervisors, ostracized her, shamed her and openly displayed their wish that she leave (A-35-40);

- The hostility and shaming created extreme stress and tension for Shultz such that reporting to work became intolerable for her (A-40); and

- No pregnant woman in Shultz's position would have reasonably continued to subject herself to such work conditions (A-39-40).

In the District Court's opinion, facts alleging that her direct supervisors suddenly stopped "speaking" to her, refused to look at her or acknowledge her presence were not reflective of discriminatory animus. (A-104-06). Rather, such evidence inferred only "petty slights," "workplace snubs" and "personality conflicts." (A-110-11). Clearly, the District Court failed to read Shultz's complaint holistically. See Doe, 831 F.3d at 57. In evaluating discrimination and retaliation claims, this Court has instructed that:

> Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015).

22

The District Court failed to explain why Shultz could not proceed to discovery on the issue of bad faith and the deteriorated working relationships after the termination, especially given the close work relationship between Shultz and Defendant Reiss, and the direct reporting to supervisors who refused to speak to Shultz. (A-38-40). Moreover, whether an employer tries to intentionally diminish an employee's reputation is relevant to adverse employment action. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1995) (stating that a former employee may have a claim for retaliation where the former employer "sullies the plaintiff's reputation."); see also Guruswamy v. Marsh & Mclennan Cos., Inc., 13-CV-7598(LTS)(GWG), 2016 WL 3248496, at *3 (S.D.N.Y. June 10, 2016).

### 3. The District Court Ignored the Allegations of Pregnancy Bias and Prejudice When It Held that Shultz Was Unconditionally Restored to Her Position

Initially, Defendants told Shultz that she was being terminated because the Congregation was undergoing a "restructuring," and as part of this, her position was being eliminated. (A-36). In response, Shultz alleged that this proffered reason was pretextual and fabricated and she was fired because she was pregnant. (A-37). To help demonstrate pretext, Shultz alleged that Defendants Soloveichik, Reiss and Lustig adhered to conservative religious beliefs that forbid sexual intercourse before marriage. (A-33-34). For example, the Complaint alleged that (i) the Congregation is the oldest Orthodox Jewish congregation in the United

23

States, (ii) its members adhere to traditional Orthodox law, (iii) this law forbids sex outside of the context of marriage and (iv) this law sanctions sexual relations with a woman only after a properly conducted Orthodox marriage ceremony. (Id.).

Reference to Defendants' religious convictions was important to provide context as to this particular work environment and as to why it was reasonable for Shultz to suspect the restructure plan was pretext for pregnancy discrimination. Also, this background helps show why Defendant Soloveichik's reaction at the termination meeting was inconsistent with a pregnant employee being terminated simply because of restructuring. In almost all other contexts in which there is a restructuring, the head of a company would not have "refused to look at, speak to or acknowledge in any way" an employee during a termination meeting. (A-35).

Shultz does not challenge the plausibility of Defendants' religious beliefs or question the reasonableness of their beliefs because such questions are not necessary to show a discriminatory intent.[3] Moreover, because Defendants do not assert defenses to their conduct based on articulated religious reasons, Shultz's claims do not implicate or threaten the Congregation's religious interests or

---

[3]    There is no dispute that the Congregation is a religious organization or that Shultz was responsible for primarily secular tasks. (A-31-33).

freedoms, and accordingly, the Complaint and the motion to dismiss exclude a discussion of Defendants' First Amendment rights.[4]

To the extent that Defendants assert a religious reason for Shultz's termination during discovery, Shultz will be able to argue that the religious reason is a pretext for unlawful discrimination.[5]  See DeMarco v. Holy Cross High School, 4 F.3d 166, 170-71 (2d Cir. 1993); Redhead v. Conference of Seventh-Day Adventists, 440 F. Supp. 2d 211, 222–24 (E.D.N.Y. 2006), adhered to on reconsideration, 556 F. Supp. 2d 125 (E.D.N.Y. 2008); Ganzy, 995 F. Supp. at 349 ("[I]t remains fundamental that religious motives may not be a mask for sex discrimination in the workplace.").

Because the District Court ignored this contextual background, it marginalized Shultz's pregnancy discrimination allegations and improperly held that she failed to state a claim under Rule 12(b)(6).  Unquestionably, Defendants fired Shultz on July 21, 2015 and she has alleged in specific detail that Defendants

---

[4]     Thus, this case is about "an unlawful discharge on the account of pregnancy" rather than "a secular employee's lawful discharge for violating a religious policy."  Ganzy v. Allen Christian Sch., 995 F. Supp. 340, 349 (E.D.N.Y.1998); accord Goodman v. Archbishop Curley High School, Inc., 149 F. Supp. 3d 577, 585–86 (D. Md. 2016) ("[C]ourts have recognized that simply allowing an employment discrimination or retaliation claim to proceed under the McDonnell Douglas scheme does not threaten a Defendant's religious interests or freedoms.").

[5]     Whether a defendant has a legitimate non-discriminatory reason "is an issue to be decided on summary judgment, not at the motion to dismiss stage." Robinson v. Gucci Am., 11-CV-3742(JPO), 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012).

were motivated by prejudice and bias such that she suffered an actionable adverse employment action.

### 4.    Allegations Showing Temporal Proximity

The District Court failed to recognize the importance of the temporal proximity between the termination and the disclosure of Shultz's pregnancy.  The Complaint alleges that Defendants Soloveichik, Reiss and Lustig engaged in the discriminatory decision to fire Shultz *days* after learning that she was pregnant. (A-35-37, 100-103).  The fact that Defendants fired her so quickly after learning about her pregnancy is directly probative as to unlawful bias.  See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001) ("[I]n this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.") (citation and quotation marks omitted)); Briggs v. Women in Need, Inc., 819 F. Supp. 2d 119, 128 (E.D.N.Y. 2011) (holding that the temporal proximity of one month between the plaintiff's termination and her pregnancy, childbirth or related medical condition can raise an inference of discrimination sufficient to survive a motion to dismiss).

Similarly, the District Court placed no weight on the fact that Shultz heard about the restructuring and job elimination for the first time at the termination

meeting.  (A-36).  Such timing strongly suggests that her termination was based on Shultz's pregnancy, not based on a gender-neutral decision to eliminate her position.  See Gorman-Bakos 252 F.3d at 554.  It is highly suspect that an eleven-year employee, who reports directly to the Rabbis and executive director, first learned about a major organizational upheaval at the synagogue so soon after disclosing her pregnancy.

## II.  THE DISTRICT COURT ERRED IN NOT FINDING THAT THE COMPLAINT ALLEGED A HOSTILE WORK ENVIRONMENT CLAIM

Shultz suffered an adverse employment action because she was fired, the attempted rescission was not *bona fide* and she reasonably rejected it.  Shultz also alleged adverse employment actions in connection with her claim for a hostile work environment.  This Court has held that "[i]n order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted).  The standard has objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive

27

the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014); see also Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004).[6]  For conduct to be found severe or pervasive, there is no "threshold magic number of harassing incidents," Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000), and an environment need not be found to be "unendurable," "intolerable," or cause damage to the "victim's 'psychological well-being.'" Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (citation omitted).

Here, Defendants discriminated against Shultz as a result of her pregnancy and that the harassment in connection with this discrimination amounted to a hostile work environment.  As such, she alleged an adverse employment action on this basis.  See White v. N. Y. City Dept. of Educ., 12-CV-1376(CM), 2014 WL 1273770, at *16 (S.D.N.Y. Mar. 28, 2014) ("Being forced to endure a hostile work environment qualifies as an adverse employment action."); Vinson v City of New York, 04-CV-7769(JGK), 2007 WL 965338, at *8 (S.D.N.Y. Mar. 30, 2007) ("A hostile work environment can constitute an adverse employment action for the purposes of establishing a prima facie case of employment discrimination under Title VII.").

---

[6]    Green v. Brennan, 136 S. Ct. 1769, 1789 (2016) (referring to a hostile work environment claim as being a "lesser included" claim relative to a claim for constructive discharge); see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 66 (2d Cir. 2000); A-65, 86 (discussing at oral argument the differential standard for a hostile work environment claim and that the allegations exceed such claim to allege a constructive discharge).

### A.    Allegations in Support of a Hostile Environment

Shultz was a devoted eleven-year employee who was visibly pregnant and informed immediately upon disclosing her pregnancy that she was being terminated.    (A-31, 35-36).    Shultz was clearly distraught by the sudden termination and lack of concern for the difficulties associated with finding new employment and the cut-off of her medical insurance in the middle of her pregnancy.  (A.36).  The Defendants' decision to terminate her, claiming a bogus "restructuring" as the basis, caused Shultz stress and anxiety.  (A-40).  Such anxiety and feelings of perceived extreme hostility is not unusual following terminations and relevant to whether an employee endured a hostile environment. See Kelly v. Chase Manhattan Bank, 717 F. Supp. 227, 235 (S.D.N.Y. 1989) ("Even under the most optimal circumstances . . .  termination of an employee is likely to give rise to bad feelings and anxiety."); EEOC. v. Kallir, Philips, Ross Inc., 420 F. Supp. 919, 926–27 (S.D.N.Y. 1976), aff'd sub nom., 559 F.2d 1203 (2d Cir. 1977) (discussing the extreme hostility and antagonism between the parties after termination).

In addition, the Complaint clearly alleged that despite a letter from her counsel to Defendants placing them on notice of her protected complaints, and despite the subsequent Reoffer letter, Defendants never took steps to dispel Shultz of the strong inference that she was terminated because of her pregnancy or

reassure her that the decision to terminate her was not related to her pregnancy. (A-38-40). It was entirely reasonable for Shultz to believe that Defendants continued to harbor animus and prejudice against her because of her pregnancy. (Id.).

**B.    The District Court Erred In Not Determining Whether the Allegations Stated a Hostile Work Environment Claim**

It was clear error for the District Court to not address Shultz's claims for a hostile work environment in light of the multitude of allegations about increased animosity between the parties that was problematic due to the required close physical proximity Shultz shared with Defendant Reiss on a daily basis. (A-65-66). Indeed, the fact that Defendant Reiss told Defendant Lustig at the office, in a voice loud enough for Shultz to hear, that she was out for a "lottery ticket," disparaged her lawyers and said that the Congregation had a right to care about her pregnancy is more than enough to plausibly suggest extreme hostility such that discovery is warranted. (A-38-39); see EEOC v. Prudential Fed. Sav. and Loan Ass'n, 763 F.2d 1166, 1172 (10th Cir. 1985) ("Reinstatement may not be . . . appropriate when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible.").

30

This analysis is necessarily fact intensive, and as with the claims under Title VII, cases cited by Defendants in support of their motion were almost exclusively decisions following a Rule 56 motion or trial.[7]

## III. THE DISTRICT COURT ERRED WHEN IT DISMISSED SHULTZ'S CONSTRUCTIVE DISCHARGE CLAIM

The District Court held that Shultz failed to allege a claim for constructive discharge. (A-106-107). To plead constructive discharge, Shultz needed to plausibly allege that her "working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign." (A-106) (quoting Green, 136 S. Ct. at 1776). On the issue of constructive discharge, the

---

[7]    In support, Defendants cited to multiple cases involving Rule 56 motions for summary judgment, in which courts, with the benefit of a full record, analyzed factual scenarios involving rescinded terminations. ¶ See Dkt. No. 29, Defs. Mem. of Law at pp. 10-12, citing Santiesteban v. Nestle Waters N. Am., Inc., 61 F. Supp. 3d 221, 228 (E.D.N.Y. 2014) (summary judgment); Borum v. Illinois Cent. R.R., Co., 13-CV-12421, 2014 WL 3845938, at *5 (E.D. Mich. Aug. 5, 2014) (summary judgment); Butler v. Potter, 06-CV-3828(JFB)(WDW), 2009 WL 804722, at *1 (E.D.N.Y. Mar. 26, 2009) (summary judgment); Cheshire v. Paulson, 04-CV-3884(FB)(LB), 2007 WL 1703180, at *1 (E.D.N.Y. June 12, 2007) (summary judgment); Incarnato v. Tops Friendly Markets, LLC., 04-CV-6500T, 2006 WL 1330103, at *1 (W.D.N.Y. May 15, 2006); Henry Wilson v. Consol. Edison Co. of New York, Inc., 96-CV-7546(RCC), 2000 WL 335733 (S.D.N.Y. Mar. 30, 2000) (summary judgment); Ticali v. R.C. Diocese of Brooklyn, 41 F. Supp. 2d 249, 254 (E.D.N.Y. 1999) (summary judgment); Wanamaker v. Columbian Rope Co., 907 F. Supp. 522, 526 (N.D.N.Y. 1995) (summary judgment); Hitt v. Connell, 301 F.3d 240, 245 (5th Cir. 2002) (directed verdict on First Amendment association claim); Keeton v. Flying J, Inc., 429 F.3d 259, 261 (6th Cir. 2005) (reversing jury verdict); Pennington v. City of Huntsville, 261 F.3d 1262, 1264 (11th Cir. 2001) (summary judgment)).

31

New York Court of Appeals explained in <u>Imperial Diner, Inc. v. State Human Rights Appeal Bd.</u>, 52 N.Y.2d 72, 78-79 (1980), as follows:

> It is unrealistic to hold that an employee can only be said to have been the victim of a discriminatory discharge when the employer has expressly fired him on the basis of . . . [a] discriminatory ground . . . but it . . . is also possible, and perhaps more likely, that an employer who believes certain individuals are undesirable employees because of some discriminatory factor, will engage in conduct which encourages the employee to quit, in which case it may be said that there has been a constructive discriminatory discharge.

<u>Id.</u> (quotations omitted). Here, Shultz states facts that show how the Congregation persisted to treat Shultz in a discriminatory manner after the termination meeting on July 21, 2015 and after giving the August 5, 2015 Reoffer letter. (A-35-40). From the moment that Defendants learned of her pregnancy, Shultz experienced a continuous and steady stream of hostility that evidenced discriminatory animus and led to her constructive discharge. <u>Kassman v. KPMG LLP</u>, 925 F. Supp. 2d 453, 475 (S.D.N.Y. 2013) (noting that "the effect of a number of adverse conditions in the workplace is cumulative . . . because a reasonable person encounters life's circumstances cumulatively and not individually."); <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 357 (2d Cir. 2001).

Analysis of a constructive discharge claim is a fact intensive inquiry that is more appropriately addressed at the summary judgment stage. <u>See, e.g.</u>, <u>Patane v. Clark</u>, 508 F.3d 106, 114 (2d Cir. 2007); <u>Wanamaker</u>, 108 F.3d at 466 ("Because there are no bright-line rules, courts must pore over each case to determine whether

the challenged employment action reaches the level of adverse."); Manners v. New York State Dept. of Envtl. Conservation, 14-CV-810(MAD)(TWD), 2015 WL 4276465, at *9 (N.D.N.Y. July 14, 2015). Therefore, it is not surprising that every case cited by the Congregation in support of dismissing Shultz's constructive discharge claim was decided on summary judgment or by directed verdict. (See Dkt. No. 29, Defs. Mem. of Law at pp. 15-17). Moreover, courts must review the facts cumulatively and in the context of the specific case, to determine whether an employee would reasonably believe that she was forced to resign. See, e.g., Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004) (working conditions must be "viewed as a whole"); Kassman, 925 F. Supp. 2d at 475 (adverse conditions in the workplace must be analyzed on a cumulative, not individual, basis). The District Court erred by viewing the factual allegations piecemeal rather than considering the totality of the circumstances, including the nature of the close working environment.

### A. Any Reasonable Employee In Shultz's Position Would Have Felt Compelled to Resign

The District Court ignored or viewed in insolation multiple factual allegations that suggest a reasonable employee in Shultz's position would have felt compelled to resign. (A-34-40); see supra pp. 20-22. In addition to the facts set forth supra, the District Court failed to address how Defendants' conduct would reasonably impact an employee, including Shultz. Instead, the District Court, after

concluding that the termination was rescinded, treated the termination decision as if it had no impact on Shultz. Additionally, the District Court did not consider the impact on Shultz resulting from the intentional removal of her name from the monthly newsletter, emailed to over 500 families. (A-41). Because of the nature of her work, Shultz interacted with members and their families on a regular basis. (A-31). She helped the membership celebrate events and holidays and considered them "mishpokhe." (Id.). Given the short list of staff contained in the monthly newsletter, her absence was noteworthy and it was reasonable to infer that Defendants intended that Shultz be offended and humiliated. Further, this fact strongly supports Shultz's claims that Defendants acted at all relevant times as if her last day was imminent. (A-40).

Similarly, it was symbolic and an honor for Shultz to have her name listed as one of only nine employees on the plaque outside the front entrance to the Synagogue. (A-39). The decision by Defendants to remove her name was intended to shame and disgrace Shultz. The act further conveyed their intent that she no longer be employed at the Congregation. Considered in a light favorable to Shultz, such facts indicate that the Defendants continued to take steps that showed Shultz they expected her to leave, and a reasonable (pregnant) person in her position would have done so. (A-39-40).

**B.     The District Court Relied on Distinguishable Case Law**

In support of dismissing Shultz's claim for constructive discharge, the District Court relied on distinguishable case law.  (A-106-07).  For instance, it analyzed Shultz's claims based on Dowrich-Weeks v. Cooper Square Realty, Inc., a case where the plaintiff alleged that she resigned "[b]ecause she could not arrange for childcare for five days a week," not because of any altered workplace conditions.   11-CV-5966(DAB), 2012 WL 3826981, at *4 (S.D.N.Y. Sept. 4, 2012).  The court in Dowrich-Weeks concluded that "a parent's inability to arrange childcare is not, as a matter of law, a workplace condition, let alone a workplace condition so egregious that a reasonable employee would be compelled to resign her position."  Id.  The facts as alleged by Shultz far exceed such a *de minimis* claim by an employee that her employer engaged in adverse action because she was unable to secure child care.

Similarly, the District Court relied on another inapposite case, Mohamed v. NYU, where the court held that the complaint failed to allege an essential element of discrimination, namely, that the defendant acted with a "discriminatory animus." 14-CV-8373(GBD)(MHD), 2015 WL 3387218, at *4 (S.D.N.Y. May 21, 2015). (A-107).  The complaint in Mohamed based claims on facts that occurred outside of the statute of limitations.  Id.  Similarly, the District Court relied on another case where the complaint omitted an essential element of discrimination, De La Pena v.

35

Metro. Life Ins. Co., 953 F. Supp. 2d 393 (E.D.N.Y. 2013), aff'd in part, rev'd in part on other grounds, De La Pena v. Metro. Life Ins. Co., 552 F. App'x 98 (2d Cir. 2014). In the De La Pena decision, the Court explained that the complaint failed to plead that "similarly-situated persons outside of plaintiff's protected class [were] treated differently." Id. at 100. Further, facts were not alleged in connection with racial animus. Id.

In stark contrast to these cases, Shultz satisfies all elements of pleading discrimination under Title VII, and alleges facts that support her claim of constructive discharge.[8]

## IV.  THE DISTRICT COURT ERRED IN FINDING THAT THE COMPLAINT FAILED TO ALLEGE FACTS GIVING RISE TO A PLAUSIBLE MINIMAL INFERENCE OF RETALIATION

For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) because [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)); see also Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312 (2004); Giudice v. Red Robin Int'l, Inc., 555 Fed. App'x 67, 68 (2d Cir. 2014).

---

[8]  The District Court also erred by dismissing Shultz's FMLA interference claim on the basis that she had not alleged that "she was terminated, constructively discharged, or otherwise subject to post-rescission adverse employment action." (A-107-08). This Court should reinstate Shultz's FMLA interference claim for the same reasons that she alleged a viable discrimination claim based on an actual or constructive termination or a hostile work environment.

### A.    Retaliation Through August 14, 2015

Shultz openly opposed the Congregation's attempt to fire her after learning of her pregnancy and further opposed its conduct when she reasonably rejected the Reoffer letter.  (A-36-40).  In response to her protected complaints, Defendants Soloveichik, Reiss and Lustig proceeded to engage in a series of continuous and blatant discriminatory acts such that any pregnant employee in her situation would have been dissuaded from speaking out in a similar manner.  See Brightman v. Prison Health Services, Inc., 62 A.D.3d 472 (1st Dep't 2009) (retaliatory conduct is "materially adverse" if it "might have dissuaded a reasonable worker from making . . . a charge of discrimination") (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

The District Court held that Shultz's allegations of continued discriminatory conduct could not support a retaliation claim because it was not in response to her protected complaint.  (A-109-10).  However, it was improper for the District Court to make a factual determination on whether the conduct was motivated by Defendants' discriminatory animus or a complaint of discrimination.  In error, the District Court concluded that cases involving "trivial" and "petty slights" were analogous to Shultz's allegations that the court described as mere "personality conflicts" and "workplace snubs."  (A-110-11).  It is much more than a "personality conflict" when Defendant Reiss made statements to Defendant Lustig

37

from her office in a voice loud enough for Shultz to hear that the Congregation had a right to care about her pregnancy and Shultz was just looking for a "lottery ticket" in connection with her pregnancy discrimination claims. (A-38-39). In sum, the District Court failed to consider that "context matters" or assess adverse action allegations with the understanding that "an act that would be immaterial in some situations is material in others." Burlington N., 548 U.S. at 67.

**B.    Retaliation After Shultz Commenced Litigation**

The District Court dismissed Shultz's claims for retaliation that occurred after this action was commenced despite multiple facts that show Defendants engaged in retaliatory conduct meant to deter similarly situated pregnant employees from complaining about discrimination, including, *inter alia*:

- Defendants sent an email blast to over 500 member families and accused Shultz of (i) "fabricating" her claims, (ii) lying about the status of her employment, (iii) falsely claiming that Shultz had been "paid every penny" due since August 14, 2015, and that (iv) Shultz sacrilegiously commenced this action on the eve of Yom Kippur  (A-41);

- Defendants continued to harass Shultz by repeatedly sending paychecks to her and her counsel despite their objection and Shultz's filing for unemployment benefits (A-28);

- Defendants claimed tax deductions on Shultz's fake paychecks that potentially subjected her to federal and state tax penalties (A-24);

- Defendants refused to remove her biography profile and photo from its website (A-28); and

38

- Defendants decided, post-commencement of this action, to vigorously contest her right to receive unemployment benefits (A-28, A-41-43).

Defendants' conduct set forth above forced Shultz's counsel to file a motion for a preliminary injunction. (A-9-11, Dkt. Nos. 41-60). Defendants' acts were intended to interfere with Shultz's ability to obtain future employment and cause her financial damages. (A-42). Faced with such relentless attacks on Shultz's reputation, any similarly situated employee in her situation would refrain from asserting protected claims. See Wanamaker, 108 F.3d at 466 (former employee may have a claim for retaliation where the former employer "sullies the plaintiff's reputation.").

By holding that Shultz failed to plausibly plead retaliation, the District Court held her to a "rigid pleading standard" that is contrary to settled law. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Unquestionably, the Congregation engaged in blatant conduct meant to discourage and threaten Shultz, as well as deter employees in the future from challenging its decisions.

## V.    AMENDING THE COMPLAINT

The District Court granted leave for Shultz to amend her complaint. (A-112). Given the extensive facts already pled, this permission suggests that the District Court expected Shultz, from the onset of litigation, to be in possession of objective and identifiable evidence to satisfy a *prima facie* case. It is not

39

reasonable to expect that Shultz, a terminated employee, would be in possession of physical documents, such as emails or witness affidavits from former co-workers, crediting her Complaint at the time the action was commenced. In the majority of employment cases, it is the employer, not the employee, who is in possession of data and has access to the relevant emails, messages, meeting notes or other internal documents that could be used to show whether a discriminatory intent was a part of the employment decision. Discovery is necessary for Shultz to prove her pregnancy was the motivating factor behind her termination or also to show that Defendants continued to harbor prejudice and animus against Shultz, even after the Reoffer letter was sent.

For example, at this juncture, only Defendants know what discussions took place between the Rabbis, Defendant and the Board after they received notice from Shultz's counsel and what was decided in connection with the Reoffer letter made days later. Importantly, Shultz's former co-workers with relevant information about Defendants' conduct most likely remain employed by Defendants and under their supervision. Expecting Shultz to possess a smoking gun document or first-hand witness statements to prove discriminatory intent or bad faith is unfair and not what Rule 8(a) and the relevant cases require. Doe, 831 F.3d at 56; Littlejohn, 795 F.3d at 307-312; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

As such, the best course of action in this case following reversal and remand, is for the parties to promptly engage in discovery and begin the process of examining the relevant documentary evidence and obtaining sworn testimony of the key individuals involved in this litigation.

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Appellant Shultz respectfully requests that this Court reverse the District Court's decision granting dismissal in its entirety.

Dated:  January 4, 2017                    Respectfully submitted,
       New York, New York

       **WIGDOR LLP**

By:   /s/Jeanne M. Christensen
      Jeanne M. Christensen
      Bryan L. Arbeit

      85 Fifth Avenue
      New York, New York 10003
      Telephone: (212) 257-6800
      jchristensen@wigdorlaw.com
      barbeit@wigdorlaw.com

      *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B). It contains 9,530 words, excluding the parts of the brief exempted
    by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
    and the type style requirements of Fed. R. App. P. 32(a)(6). It has been
    prepared in a proportionally spaced typeface using MS Word in 14 pt, Times
    New Roman.

Dated:   January 4, 2017