# 16-3140-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

ALANA SHULTZ,

*Plaintiff-Appellant,*

*v.*

CONGREGATION SHEARITH ISRAEL OF THE CITY OF NEW YORK, THE SPANISH AND PORTUGESE SYNAGOGUE, MEIR SOLOVEICHIK, In his personal and professional capacities, MICHAEL LUSTIG, In his personal and professional capacities, BARBARA REISS, In her personal and professional capacities,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANTS-APPELLEES

Vincent M. Avery
AKERMAN LLP
*Attorneys for Defendants-Appellees*
666 Fifth Avenue, 20th Floor
New York, New York 10103
212-880-3800

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........ 1

PRELIMINARY STATEMENT ........ 1

COUNTER-STATEMENT OF THE CASE ........ 2

STATEMENT OF ISSUE(S) ........ 6

COUNTER-STATEMENT OF FACTS ........ 7

SUMMARY OF ARGUMENTS ........ 14

ARGUMENT ........ 15

I. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S DISCRIMINATION CLAIM UNDER TITLE VII, BECAUSE AS A MATTER OF LAW, AN EMPLOYEE CANNOT STATE A VIABLE DISCRIMINATION CLAIM BASED UPON A PLANNED TERMINATION THAT WAS NEVER CARRIED OUT AND WAS UNCONDITIONALLY RESCINDED PRIOR TO ITS EFFECTIVE DATE ........ 15

A. The District Court Applied The Court Legal Standard To Conclude That Shultz's Factual Allegations Failed To Satisfy The "Adverse Employment Action" Element Of Her Title VII Claim Pursuant To Rule 12(b)(6) ........ 23

B. Contrary to Shultz's Assertion, The District Court's Decision Did Not Make Any "Factual Findings" In Connection With Its Decision That She Failed To State A Viable Pregnancy Discrimination Claim Under Title VII ........ 23

C. Shultz's Reliance On Case Law Regarding An Individual's Ability To "Reasonably Reject" An Offer Of Reemployment Is Misplaced ........ 31

D. Shultz's Arguments Regarding Her Ability To Satisfy The "Discriminatory Inference" Prima Facie Element Of Her Discrimination Claim Are Completely Irrelevant, As That Element Was Neither The Basis For The Congregation's 12(b)(6) Motion, Nor The Grounds Upon Which The District Court Dismissed Her Pregnancy Discrimination Claim Under Title VII ........ 36

II. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S HOSTILE WORK ENVIRONMENT CLAIM, BECAUSE SUCH A CLAIM WAS NEITHER PLED, NOR ADDRESSED, BELOW AND IS ONLY BEING ASSERTED NOW FOR THE FIRST TIME ON APPEAL, AND BECAUSE THE FACTUAL ALLEGATIONS SET FORTH IN SHULTZ'S THIRD AMENDED COMPLAINT DO NOT GIVE RISE TO A VIABLE

"HOSTILE WORK ENVIRONMENT" CLAIM AS A MATTER OF LAW ....................................................................................................38

III. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S CONSTRUCTIVE DISCHARGE CLAIM, BECAUSE THE FACTUAL ALLEGATIONS SET FORTH IN SHULTZ'S THIRD AMENDED COMPLAINT DO NOT GIVE RISE TO A VIABLE CONSTRUCTIVE DISCHARGE CLAIM AS A MATTER OF LAW ...........................................................................39

IV. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S TITLE VII RETALIATION CLAIM (COUNT NINE), BECAUSE THE THIRD AMENDED COMPLAINT FAILS TO IDENTIFY ANY COGNIZABLE "RETALIATORY ACTION" TAKEN AGAINST SHULTZ BY THE CONGREGATION..............................................................................44

V. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S FMLA CLAIM, BECAUSE SHE HAS NOT OFFERED ANY GROUNDS FOR A REVERSAL ON APPEAL ......................................................................................47

CONCLUSION ........................................................................................... 48

CERTIFICATE OF COMPLIANCE ..........................................................49

# TABLE OF AUTHORITIES

**Cases**

Ardigo v. J. Christopher Capital, LLC,
2013 U.S. Dist. LEXIS 41740 (S.D.N.Y. Mar. 25, 2013) ..................................... 41

Arroyo v. WestLB Admin., Inc.,
54 F. Supp. 2d 224 (S.D.N.Y. 1999) ..................................... 44

Baker v. Dorfman,
239 F.3d 415 (2d Cir. 2000) ..................................... 38

Borum v. Ill. Cent. R.R., Co.,
2014 WL 3845938 (E.D. Mich. Aug. 5, 2014) ..................................... *passim*

Burlington Northern and Santa Fe Ry. Co. v. White,
548 U.S. 53 (2006) ..................................... 45

Butler v. Potter,
No. 06 CV 3828, 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009),
aff'd 201 F.3d 432 (2nd Cir. 1999) ..................................... *passim*

Cheshire v. Paulson,
No. 04-CV-3884, 2007 U.S. Dist. LEXIS 42633
(E.D.N.Y. June 12, 2007) ..................................... *passim*

Chin v New York City Hous. Auth.,
106 A.D.3d 443 (1st Dept. 2013) ..................................... 41

Conkling v. Brookhaven Sci. Assocs.,
LLC, Case No. 10-CV-4164, 2012 WL 2160439
(E.D.N.Y. June 12, 2012) ..................................... *passim*

Cooper v. Wyeth Ayerst Lederle,
106 F. Supp. 2d 479 (S.D.N.Y. 2000) ..................................... 40, 42, 43

Drake v. Minnesota Min. and Mfg. Co.,
134 F.3d 878 (7th Cir. 1998) ..................................... 41

Etienne v. Wal-Mart Stores, Inc.,
186 F. Supp. 2d 129 (D. Conn. 2001) ..................................... 41

Feingold v. New York,
366 F.3d 138 (2d Cir. 2004) ....................................................................17

Ford Motor Company v. EEOC,
458 U.S. 219 (1982)....................................................................25, 32, 33

Gray v. York Newspapers, Inc.,
957 F.2d 1070 (3d Cir. 1992) ....................................................................40

Hicks v. Baines,
593 F. 3d 159 (2d Cir. 2010) ....................................................................45

Hitt v. Connell,
301 F.3d 240 (5th Cir. 2002) ....................................................................*passim*

Incarnato v. Tops Friendly Markets, LLC,
2006 WL 1330103 (W.D.N.Y. 2006) ....................................................*passim*

Jernigan v. Dalton Mgmt. Co., LLC,
819 F. Supp. 2d 282 (S.D.N.Y. 2011) ....................................25, 32, 33

Keeton v. Flying J, Inc.,
429 F.3d 259 (6th Cir. 2005) ....................................................................*passim*

L-7 Designs, Inc. v. Old Navy, LLC,
647 F.3d 419 (2d Cir. 2011) ....................................................................9, 12

Littlejohn v. City of New York,
795 F.3d 297 (2d Cir. 2015) ....................................................................23

Lopez v. S.B. Thomas, Inc.,
831 F.2d 1184 (2d Cir. 1987) ....................................................................40

Malena v. Victoria's Secret Direct, LLC,
886 F. Supp. 2d 349 (S.D.N.Y. 2011) ............................................16, 45

Martin v. Citibank, N.A.,
762 F.2d 212 (2d Cir. 1985) ....................................................................43

Mathirampuzha v. Potter,
548 F.3d 70 (2d Cir. 2008) ....................................................................16

Miano v. AC & R Advertising,
875 F. Supp. 204 (S.D.N.Y. 1995) ....................................................*passim*

Mills v. S. Conn. State Univ.,
519 F. App'x 73 (2d Cir. 2013) ....................................................................39, 43

Munday v. Waste Management of North America,
Inc., 126 F.3d 239, 241, 244 (4th Cir. 1997), cert. denied,
522 U.S. 1116 (1998).........................................................................................41

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,
05-CV-5109, 2007 WL 1149979 (S.D.N.Y. Apr. 18, 2007)......................40, 42, 43

Official Comm. of the Unsecured Creditors of Color Tile, Inc.
v. Coopers & Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003) ...............................................................................38

Pena v. Brattleboro Retreat,
702 F.2d 322 (2d Cir. 1983) ...............................................................................39

Pennington v. City of Huntsville,
261 F.3d 1262 (11th Cir. 2001) .....................................................................*passim*

Potash v. Florida Union Free Sch. Dist.,
972 F. Supp. 2d 557 (S.D.N.Y. 2013) ...........................................................39, 43

Santiesteban v. Nestle Waters North Am., Inc.,
61 F. Supp. 3d 221 (E.D.N.Y. 2014) ..............................................................*passim*

Schmidt v. Polish People's Republic,
742 F.2d 67 (2d Cir. 1984) .................................................................................38

Spence v. Maryland Casualty Co.,
995 F.2d 1147 (2d Cir. 1993) .............................................................................43

Stetson v. NYNEX Service Co.,
995 F.2d 355 (2d Cir. 1993) ........................................................................40, 42, 43

Teppenvien v. Entergy Nuclear Operations, Inc.,
663 F.3d 556 (2d Cir. 2011) ...............................................................................45

Ticali v. Roman Catholic Diocese,
41 F. Supp. 2d 249 (E.D.N.Y. 1999), aff'd without opinion
F.3d 432 (2d Cir.1999).........................................................................................17

Wanamaker v. Columbian Rope Co.,
907 F. Supp. 522 (N.D.N.Y. 1995), aff'd 108 F.3d 462
(2nd Cir. 1995) ........................................ *passim*

Whidbee v. Garzarelli Food Specialties, Inc.,
223 F.3d 62 (2d Cir. 2000) ........................................ 39, 40

Wilson v. Consolidated Edison Co.,
96-CV-7546, 2000 U.S. Dist. LEXIS 3895 (S.D.N.Y. Mar. 30, 2000) ........... *passim*

**Rules**

Rule 12(b)(6) ........................................ *passim*

## CORPORATE DISCLOSURE STATEMENT

Appellee/defendant Congregation Shearith Israel of the City of New York, the Spanish and Portuguese Synagogue (the "Congregation") affirms that it does not have any parent corporations and that no publicly-held corporation owns 10% or more if its stock.

## PRELIMINARY STATEMENT

At its core, this is a case about an employee's right to initiate civil litigation under Title VII over an employment decision (such as a termination) that (a) *was never implemented*, (b) *was completely and unconditionally retracted before ever going into effect*, and (c) *had no alleged impact on the terms and conditions of employment of any kind* (seeing that it never took place), while at the same time basing the claim on nothing more than the employee's wholly conclusory and legally irrelevant assertion that the employer's change of heart was subjectively motivated by a desire to avoid the very litigation she is seeking to commence.

Unfortunately for Plaintiff-Appellant Alana Shultz ("Shultz"), the courts in this Circuit and nationwide have uniformly answered this question in the negative. And rightly so. A contrary ruling would amount to the outright elimination of the threshold "adverse employment action" element of a discrimination claim under Title VII, and render actionable any employment action that was momentarily contemplated, regardless of whether it was ever implemented and/or had any impact

whatsoever on the terms and conditions of the plaintiff's employment. Yet, as set forth below, that is precisely what occurred in this case.

Accordingly, the Congregation submits this Brief in opposition to the appeal filed by Shultz from the August 15, 2016 Order and Decision by the Honorable J. Paul Oetkens, U.S.D.J. of the U.S. District Court for the Southern District of New York, granting its motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] For the reasons that follow, this Court should affirm the district court's August 15, 2016 Order and Decision in full.

## COUNTER-STATEMENT OF THE CASE

Shultz commenced this action on September 22, 2015, initially asserting an interference-based claim under the FMLA, and pregnancy discrimination claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). One week later, on September 29, 2015, Shultz then filed her First Amended Complaint ("FAC"), adding claims for retaliation under the NYSHRL and NYCHRL, as well as a claim for defamation under state common-law. (A4-A5[2]) The gravamen of Shultz's discrimination claims was essentially that, on July 21, 2015, she was wrongfully terminated from her employment because of her pregnancy in violation of the above-referenced state and city laws, which in turn,

---

[1] Although Shultz had asserted state and city law claims against the individual defendants, which were subject to the Rule 12(b)(6) motion, the district court declined to exercise supplemental jurisdiction over those claims. As such, the only claims that are subject to this appeal are those that were asserted against the Congregation. Accordingly, for ease of reference, the defendants' Rule 12(b)(6) motion shall hereinafter be referred to as the "Congregation's Rule 12(b)(6) motion."

[2] All citations to the Appendix shall be in the form of "A__," unless otherwise stated herein.

prevented her from exercising her FMLA leave rights when she subsequently gave birth. (See ECF Docket Entry No. 14; see also, A26-A56)

However, as Shultz herself acknowledged in her FAC, in reality, she was not actually terminated on July 21, 2015, but was merely advised that the Congregation was *planning* to terminate her position on August 14, 2015 (three weeks in the future) as part of an organizational restructuring. (A36 at ¶¶62-63; A48 at ¶153) Shultz then acknowledged in her FAC that, on August 5, 2015, nine days before the effective date of her termination and while she was still employed in the exact same position, the Congregation decided to abandon the planned reorganization and specifically advised Shultz (in writing) of this decision. (A38 at ¶79) In fact, on that date, the Congregation advised Shultz that it was unconditionally rescinding her termination, effective immediately, and that she would therefore continue to remain employed in the same position, earning the same compensation and benefits, she had always enjoyed. (A19)

Nevertheless, even though she was specifically advised in writing on August 5, 2015 that she was not being terminated, Shultz decided to stop showing up for work on August 15, 2015 and subsequently file this lawsuit claiming she was wrongfully terminated. Notably, even after Shultz stopped showing up for work, the Congregation took absolutely no action to alter or modify the terms and conditions of her employment: it continued to pay her the exact same compensation and provide her with the exact same benefits she had always received.

Accordingly, on October 26, 2015, the Congregation filed a motion to dismiss pursuant to Rule 12(b)(6), asserting that, *inter alia*, Shultz had failed to state a viable cause of action under any of the statutory or common-law theories of recovery identified in her FAC. (See A6; ECF Docket Entry No. 20) Thereafter, on November 16, 2015, Shultz filed a Second Amended Complaint ("SAC"), adding a handful of allegations, as well as an entirely new pair of "constructive discharge" claims under the NYSHRL and NYCHRL. (ECF Docket Entry No. 23) The Congregation then responded to Shultz's SAC on December 8, 2016, via a renewed motion to dismiss pursuant to Rule 12(b)(6), which addressed the newly added constructive discharge claims. (ECF Docket Entry Nos. 26-27, 29)

Thereafter, on February 3, 2016 and while the Congregation's renewed Rule 12(b)(6) motion was pending, Shultz filed a motion for a preliminary injunction, requesting an Order directing the Congregation to, *inter alia*, stop sending Shultz's weekly paychecks to her attorney[3] and remove her from the Congregation's website, which still listed Shultz as the Program Director. (ECF Docket Nos. 41-43) In response Shultz's formal request in her motion for the Congregation to take such

---

[3] The Congregation had been sending Shultz her regular paycheck ever since she stopped showing up for work on August 15, 2015, because she and her counsel refused to state whether or not she had resigned from her position and the Congregation did not want to take any action to alter the terms and conditions of her employment. Prior to filing this motion, Shultz's counsel had sent a letter to defense counsel, requesting that the Congregation refrain from sending Shultz her paychecks directly and characterized the delivery of such paychecks as "direct communications" with her client. (ECF Docket No. 42 at Exs. C-D) Accordingly, when defense counsel's request for clarification as to whether Shultz was tendering her resignation went unanswered, the Congregation began sending all of Shultz's paychecks to her counsel in order to avoid "direct communications" with Shultz, as per her attorney's request. Id.

action, the Congregation removed Shultz from its website and ceased sending her paychecks to her attorney. The remainder of Shultz's motion, which essentially requested a declaration by the district court that Shultz's employment had ended back in August or September, 2015 (the only aspect of the motion that was opposed by the Congregation), was then denied on March 18, 2015. (ECF Docket Entry No. 60)

While both the Rule 12(b)(6) motion and Shultz's motion for a preliminary injunction were pending, Shultz received her right to sue letter from the Equal Employment Opportunities Commission ("EEOC") for her claims under Title VII and filed the Third Amended Complaint ("TAC") pursuant to a joint stipulation specifically affirming that (a) the TAC did not add any new factual allegations and merely asserted the same pregnancy discrimination claims under Title VII that had been asserted under the NYSHRL up to that point in timeand (b) the parties would rely on their previously-filed motion papers "with respect to Plaintiff's Title VII claims and such claims only survive to the extent the NYSHRL claims in the [SAC] survive Defendants' motion to dismiss." (A10-A11)

Thereafter, the district court directed counsel for the parties to appear for oral argument on the Congregation's Rule 12(b)(6) motion, which was held on May 18, 2016. (A12) On August 15, 2016, the district court then issued its Order and Memorandum of Decision on the Congregation's Rule 12(b)(6) motion, in which it:

(a) dismissed Shultz's wrongful termination-based pregnancy discrimination claim under Title VII based upon the well-settled rule

that such a claim cannot be premised upon a planned termination that was unconditionally rescinded prior to its effective date (A100-A106);

(b) dismissed Shultz's constructive discharge claim under Title VII on the grounds that she had failed to plead sufficient factual allegations to give rise to such a claim as a matter of law (A106-A107);

(c) dismissed Shultz's FMLA interference claim, because in the absence of either a termination or constructive discharge, she had not offered any "other argument as to how Defendants denied her benefits protected by the FMLA" (A108);

(d) dismissed Shultz's retaliation claim under Title VII for failing to allege sufficient facts to give rise to a plausible retaliation claim under the statue (A109-A111);

(e) declined to exercise supplemental jurisdiction over any of Shultz's state or city law claims (A111-A112); and

(f) granted Shultz's counsel request (at oral argument) for leave to amend her complaint once more. (A112)

Thereafter, on September 9, 2016, Shultz then initiated this appeal via filing her Notice of Appeal. (A114) The Congregation now submits this Brief in opposition to Shultz's appeal, and respectfully requests that the district court's August 15, 2016 Order and Decision be affirmed in full.

## STATEMENT OF ISSUE(S)

1. Should this Court affirm the district court's ruling that Shultz had failed to state a viable claim for wrongful termination-based pregnancy discrimination under Title VII in light of the undisputed fact that her termination was never actually implemented, was unconditionally and unequivocally rescinded by the Congregation

prior to its effective date, and is not alleged to have had any other tangible impact on the terms and conditions of her employment in the TAC?

2. Should this Court affirm the district court's ruling that the minor and innocuous workplace interactions Shultz points to in her Complaint in support of her constructive discharge claim do not give rise to a viable constructive discharge claim under Title VII?

3. Should this Court affirm the district court's ruling that Shultz has failed to allege sufficient facts to give rise to a viable retaliation claim under Title VII?

## COUNTER-STATEMENT OF FACTS[4]

Established in 1654, the Congregation is the oldest Jewish congregation in the United States, and serves the Orthodox Jewish community in New York City and the surrounding communities. (A26 at ¶1; A33 at ¶40) Shultz was employed by the Congregation as its full-time Program Director beginning in 2004, generally working forty hours per week. (A31 at ¶25; A32 at ¶30) During her employment, Shultz reported to Barbara Reiss ("Reiss") and the Rabbis employed by the Congregation, which include Rabbi Meir Soloveichik ("Soloveichik"), Rabbi Richard Hidary, Rabbi Marc Angel, and Rabbi Ira Rhode. (A32 at ¶34) The terms and conditions of her employment, as well as those of other employees of the Congregation, were subject to and controlled by the Congregation's Board. (Id. at ¶¶ 35-37)

[4] Due to the fact that the standard on a Rule 12(b)(6) motion presumes the factual allegations in the pleadings to be true, the facts set forth herein are based exclusively upon the allegations set forth in Shultz's TAC and the documents referenced therein.

On June 28, 2015, Shultz was married in an Orthodox ceremony, at which time she was pregnant. (A35 at ¶53) According to Shultz, two days later, she informed Reiss, the Congregation's Executive Director, of her pregnancy and requested that Reiss notify the Rabbis of the news. (Id. at ¶54) Shultz then began her three-week honeymoon, from which she returned on July 20, 2015. (Id. at ¶56) According to Shultz, following her return from her honeymoon, on July 21, 2015, she was summoned by Michael Lustig ("Lustig") (a non-employee, volunteer member of the Congregation's board of trustees and Vice President) and Soloveichik (the Congregation's Rabbi) to meet with them along with Reiss. (Id. at ¶¶57-59; A48 at ¶151) During this meeting, Shultz alleges that Reiss told her that the Congregation was undergoing an organizational restructuring, which would result in the elimination of her position as Program Director on August 14, 2015.[5] (A36 at ¶¶62-63; A48 at ¶153) At that point, Shultz alleges that she was presented with a severance agreement, which memorialized August 14, 2015 as her future termination date and provided for Shultz to receive severance payments following her then-anticipated separation of employment on August 14, 2015. (A37 at ¶¶69-71) Shultz did not sign the agreement. (A27 at ¶5; A37 at ¶75)

[5] Notably, aside from merely being in the room when this alleged meeting took place, Plaintiff does not allege that either Soloveichik or Lustig actively participated in this meeting. Id. at (A35 at ¶60; A36 at ¶67) According to Plaintiff's own allegations, Soloveichik and Lustig were merely witnesses to the conversation that took place between Plaintiff and her female supervisor, Reiss. (Id.) Indeed, the pleading alleges that Soloveichik and Lustig did ***not*** say or do anything, and nothing is alleged that either of the individuals did or said anything to support the termination. Id. Moreover, it is not alleged that any of the individual defendants in this case participated in the decision making process regarding Shultz's termination.

Shortly thereafter, on August 5, 2015 – *i.e.*, prior to the August 14, 2015 effective date of Shultz's termination and while she remained employed in the exact same title, performing the same job duties, and receiving the exact same compensation she had always enjoyed – the Congregation advised Shultz that, effective immediately, it was unconditionally rescinding both the elimination of her Program Director position and her termination of employment. (A38 at ¶79) Specifically, on that date, the Congregation provided Shultz with a letter stating in no uncertain terms:

> The Congregation has reevaluated its plans to eliminate your position as Program Director, and hereby rescinds its termination of your employment. Please consider the contents of our letter to you dated July 21, 2015 null and void, and, effective immediately, your employment by Congregation Shearith Israel fully reinstated.
>
> We look forward to continuing to work with you.

(A19[6])

Notably, the Congregation did not attempt to condition this rescission on Shultz's release of any claims. (Id.) Nor did it attempt to place her in a different position than the Program Director title she has held since 2004. (Id.) Rather, it specifically advised her that it was no longer planning to terminate her employment and that she would therefore continue to be employed in the same position she has

---

[6] Plaintiff specifically quotes from and refers to the Congregation's August 5, 2015 correspondence in her Complaint, and thus, the district court was permitted to consider this document in connection with Defendants' instant motion to dismiss pursuant to Rule 12(b)(6). See e.g., L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011). Plaintiff does not contend otherwise on appeal.

always held. Id. Shultz acknowledges receiving this letter on August 5, 2015 (A38 at ¶79), and thus, there is no dispute that she was advised that her termination had been rescinded prior to its effective date. Equally undisputed is the fact that Shultz did not suffer any break in pay or benefits between July 21, 2015 (the date on which she was advised of her future termination) and August 5, 2015 (the date on which the Congregation unconditionally and unequivocally rescinded her termination and explicitly advised her of that fact). Nevertheless, despite the Congregation's unconditional retraction of Shultz's termination, Shultz stopped showing up for work after August 14, 2015. (A40 at ¶¶94-95) Because Shultz and her counsel refused repeated requests for clarification from the Congregation's attorney as to whether Shultz was tendering her resignation and, if so, the date of such resignation, following her refusal to show up for work on August 15, 2015, the Congregation continued to pay Shultz the same compensation and benefits she had always received, and continued to treat her in all other respects as its Program Director. (A21-A24; A28 at ¶11; A84 at 3-7; see also, ECF Docket No. 42 at Ex. C; ECF Docket No. 43 at ¶¶6-8)

Over the course of the next five months, Shultz's attorney then actively attempted to *block* Shultz from continuing to receive her paychecks from the Congregation so as to claim that Shultz was terminated (as opposed to resigning or continuing to be employed by the Congregation). (Compare A28 at ¶11 and A45 at ¶¶125- 131; with A21-A24, A84 at 3-7, ECF Docket Entry No. 43 at ¶¶6-8; and ECF Docket Entry No. 53 at Ex. D)

For instance, on September 25, 2015, shortly *after* Shultz filed her Complaint claiming she was wrongfully terminated from her position and seeking to recover alleged back-pay she claimed to have suffered as a result of said termination (A55, Prayer for Relief at ¶ C), Shultz's counsel sent defense counsel a letter explicitly admitting that the Congregation had not ceased paying Shultz her monthly parsonage and bi-weekly paycheck as of the date of the letter, even though Shultz "wrote to the Congregation specifically requesting that it cease automatically depositing funds into her account[,]" and then allegedly attempted to "discontinue direct deposit" herself on September 10, 2015. (A20-A21)

Remarkably, however, this was not the only occasion on which Shultz's counsel sent defense counsel written correspondence explicitly confirming that the Congregation has continued to pay Shultz the exact same compensation and benefits she received prior to announcing her pregnancy, notwithstanding her absence from work since August 14, 2015. Indeed, on October 6, 2015, Shultz's counsel actually went so far as to send defense counsel a "cease and desist" letter, *literally* demanding that the Congregation "cease and desist" from continuing to send Shultz her bi-weekly paychecks and monthly parsonage payment (*i.e.*, the very same back-pay Shultz is now seeking to recover in this litigation), because she was still receiving the same compensation and benefits she had been receiving prior to her pregnancy

announcement. (A23[7]) Indeed, when defense counsel ceded to Shultz's counsel request and had Shultz's paychecks sent to her attorney instead, Shultz filed a motion for a preliminary injunction asking the district court for an order directing the Congregation to stop paying her, remove her from the website, and take various other actions to effectively terminate her employment. (ECF Docket Entry Nos. 41-43).

Moreover, indirectly conceding that she has not been terminated from her position as Program Director, Shultz also alleges that she was constructively discharged by the Congregation in an effort to preserve her baseless claims. (A49-A50 at ¶¶ 156-161) Shultz's outlandish constructive discharge claim is based on alleged comments by Reiss that she "had no problem having this [legal claim] out in the community" and that Shultz was "looking for a lottery ticket," as well as her subjective perception that the Congregation sought to berate her regarding her pregnancy. (A38-A39, ¶¶ 82-83, 85-89; A98; A106-A107)

Notwithstanding the foregoing, on September 22, 2015, the eve of Yom Kippur, Shultz filed her Complaint, and her attorney issued a press-release specifically stating that the lawsuit was intentionally filed on the eve of Yom Kippur, which was subsequently reported by multiple news organizations. (A41 at ¶98)

---

[7] Notably, because Plaintiff's discrimination claim under Title VII hinges on whether the Congregation terminated her employment on August 14, 2015, these two items of correspondence from Plaintiff's own counsel undeniably show that the Congregation has *not* terminated her employment and, if anything, it has been *Plaintiff* who has taken affirmative steps to block her continued receipt of the very compensation she seeks to recover in this litigation. As such, these two documents can also be considered in connection with Defendants' motion to dismiss, L-7 Designs, Inc., 647 F.3d at 422, and Plaintiff does not assert otherwise on appeal.

Thereafter, on September 25, 2015, the Congregation disseminated an email to approximately 500 of its members simply denying the allegations, and noting that it was unfortunate that Shultz and her attorneys took advantage of the Congregation's inability to respond to press inquiries by filing the lawsuit hours before the start of Yom Kippur. Specifically, the Congregation's statement read:

> Congregation Shearith Israel categorically denies Ms. Shultz's allegations of discrimination or of doing anything wrong. In addition, Congregation Shearith Israel did not terminate her employment. She continues to remain employed in the exact same title, receiving the same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits – even though she has not been to work since August 14th. It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

(Id. at ¶99) Notably, in her TAC, Shultz identifies this statement as the "retaliatory" action she suffered as a result of her decision to initiate this litigation. (Id.)

As stated above, after extensive briefing and oral argument on the Congregation's Rule 12(b)(6) motion, the district court found that these allegations were insufficient to give rise to a viable wrongful termination, constructive discharge or retaliation claim under Title VII, or an interference claim under the FMLA. (A96-A113) For the reasons that follow, the Congregation respectfully requests that this Court affirm that decision in full.

## SUMMARY OF ARGUMENTS

This Court should affirm the district court's well-reasoned Order and Decision on the Congregation's Rule 12(b)(6) motion, because Shultz has simply failed to allege sufficient factual allegations to state viable discrimination, constructive discharge, and retaliation claims under Title VII, or an interference claim under the FMLA.

First, Shultz's termination-based pregnancy discrimination claim under Title VII fails as a matter of law in light of the well-settled rule that a contemplated employment action, which is unconditionally and completely rescinded prior to its effective date and is not alleged to have had any impact on the terms and conditions of the plaintiff's employment (because it was never actually implemented) cannot form the predicate "adverse employment action" upon which a discrimination claim under Title VII can be based.

Second, seeing that her sole basis for asserting an FMLA claim is her legally-inaccurate assertion that she was "terminated," the dismissal of her FMLA claim should also be affirmed.

Third, Shultz has not pled sufficient factual allegations to plausibly assert a constructive discharge claim under Title VII, given that the minor incidents that she identifies in her TAC do not, as a matter of law, satisfy the *prima facie* requirements of such a claim.

Fourth, with regard to Shultz's "hostile work environment" claim, this claim is improperly being asserted for this *first time* on this appeal. This claim was not pled in any of Shultz's *four complaints*, not raised by Shultz in opposition to the Congregation's Rule 12(b)(6) motion, not raised by Shultz at oral argument on the motion to dismiss, and was not considered by the district court when it issued the decision. Seeing that it is well-settled that parties cannot assert claims or arguments for the first time on appeal or otherwise amend a complaint via asserting an entirely new claim in a brief, her arguments regarding her newly-asserted "hostile work environment" claim should not be considered by this Court. However, even if this claim were considered on appeal, it would fail for the same reasons as her constructive discharge claim.

Finally, this Court should affirm the dismissal of her retaliation claim, because the factual allegations in her TAC simply do not give rise to a viable claim for retaliation under Title VII as a matter of law.

## ARGUMENT

### I. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S DISCRIMINATION CLAIM UNDER TITLE VII, BECAUSE AS A MATTER OF LAW, AN EMPLOYEE CANNOT STATE A VIABLE DISCRIMINATION CLAIM BASED UPON A PLANNED TERMINATION THAT WAS NEVER CARRIED OUT AND WAS UNCONDITIONALLY RESCINDED PRIOR TO ITS EFFECTIVE DATE

As a matter of law, the factual allegations set forth in Shultz's TAC do not give rise to a viable termination-based discrimination claim under Title VII, as her claim is

ultimately premised upon the legally incorrect assertion that an employee can assert a discrimination claim based upon a contemplated employment action that was never implemented, was unconditionally rescinded prior to its effective date, and is not alleged to have had any other tangible impact on the terms and conditions of her employment. Accordingly, this Court should affirm the district court's dismissal of Shultz's termination-based discrimination claim under Title VII, *i.e.*, the "Second Cause of Action" in the TAC.

In order to effectively plead a pregnancy discrimination claim under Title VII, a plaintiff must set forth sufficient *prima facie* allegations that: "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged [or suffered some other actionable adverse employment action]; and (4) her position remained open and was ultimately filled by a non-pregnant employee." Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2011) (citations omitted).

As for the third element (which is the only element in dispute on this claim on appeal), in order to properly plead the adverse employment action element, a plaintiff must allege facts plausibly showing that she suffered a "materially adverse change in the terms and conditions of [her] employment." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008). "Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation.'" Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citations omitted).

Here, Shultz failed to allege sufficient facts to plausibly suggest she was terminated or subject to any other cognizable "adverse employment action" under the well-settled law in this area. Indeed, it is axiomatic and been consistently held by courts that, while termination of employment does constitute an adverse employment action, when that termination is rescinded prior to its effective date and the employee is reinstated under the same terms and conditions of employment she previously enjoyed, she *cannot* rely on the retracted termination to satisfy the adverse employment action element of a discrimination claim under Title VII. See Ticali v. Roman Catholic Diocese, 41 F. Supp. 2d 249, 264 (E.D.N.Y. 1999), aff'd without opinion 201 F.3d 432 (2d Cir.1999); Conkling v. Brookhaven Sci. Assocs., LLC, Case No. 10-CV-4164, 2012 WL 2160439, at *10 (E.D.N.Y. June 12, 2012) ("a termination that is rescinded with no other adverse consequences does not constitute an adverse employment action") (citations omitted); Incarnato v. Tops Friendly Markets, LLC, 2006 WL 1330103, at *14 (W.D.N.Y. 2006)("While termination from employment certainly constitutes an adverse employment action, where the termination is rescinded, and the plaintiff is offered re-employment under the same conditions as she previously enjoyed, the plaintiff cannot establish that her employment was terminated."); Cheshire v. Paulson, No. 04-CV-3884, 2007 U.S. Dist. LEXIS 42633, at *6 (E.D.N.Y. June 12, 2007) (holding that a rescinded

termination does not constitute an adverse employment action as a matter of law); Butler v. Potter, No. 06 CV 3828, 2009 WL 804722, at *13 (E.D.N.Y. Mar. 26, 2009) (holding that an employee whose notice of termination was expunged prior to its effective date did not suffer an adverse employment action as a matter of law); aff'd, 201 F.3d 432 (2nd Cir. 1999); Wilson v. Consolidated Edison Co., 96-CV-7546, 2000 U.S. Dist. LEXIS 3895, at *8 n.14 (S.D.N.Y. Mar. 30, 2000) (holding that an offer of reinstatement to the same position prior to the effective date of termination negates any adverse employment action as a matter of law); Santiesteban v. Nestle Waters North Am., Inc., 61 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (a plaintiff cannot satisfy the adverse employment action element of a discrimination claim under Title VII or the NYSHRL where the employment action in question was unconditionally rescinded by the employer) (citations omitted); Wanamaker v. Columbian Rope Co., 907 F. Supp. 522, 534 (N.D.N.Y. 1995) (finding no adverse employment action where employer terminated employee but continued to give employee full salary and benefits because employee "did not lose any pay or other tangible benefits"), aff'd 108 F.3d 462 (2nd Cir. 1995); Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001) (no adverse employment action where the employment decision is rescinded before the employee suffers a tangible harm); Hitt v. Connell, 301 F.3d 240, 246 (5th Cir. 2002) ("neither the perception of a threat to one's job, nor fear of being fired, nor even the proposed notice of firing constitutes an actionable injury"); Keeton v. Flying J, Inc., 429 F.3d 259, 263 (6th Cir. 2005) ("[W]hen an otherwise

adverse employment action is rescinded before the employee suffers a tangible harm, the employee has not suffered an adverse employment action."); Borum v. Ill. Cent. R.R., Co., 2014 WL 3845938, *19-20 (E.D. Mich. Aug. 5, 2014) ("Even if the Court were to assume, as Borum argues, that she was terminated at the January 10th Meeting, her termination would not constitute an adverse employment action because Illinois Central quickly reversed the termination.") (citations omitted).

Notably, in this context, it does not matter whether a plaintiff claims to have "rejected" the employer's change of heart, as an employer obviously has the ability to make unilateral decisions on whether or not it is going to terminate an employee, or retract a planned termination prior to its implementation. See e.g., Incarnato, 2006 WL 1330103, at *13-14 (holding that plaintiff could not rely upon a retracted termination decision to satisfy the adverse employment action element of her *prima facie* case, because the employer had reinstated to her former position under the same working conditions with the same pay and benefits she previously enjoyed, despite the fact that plaintiff declined to accept the offer). Rather, the fundamental questions are the following: (a) whether the employer's decision to rescind the employment action was conditioned upon the plaintiff's release of any claims, (b) whether the retraction resulted in the plaintiff occupying the same title, with the same pay and benefits that she had enjoyed prior to the announcement of the aborted employment action, and was thus a "bona fide" retraction in the legal sense, and (c) whether the retraction was communicated to the plaintiff in clear and unequivocal terms. See e.g.,

See Conkling, 2012 WL 2160439 at *10; Incarnato, 2006 WL 1330103 at *14; Cheshire, 2007 U.S. Dist. LEXIS 42633 at *6; Butler, 2009 WL 804722 at *13; Wilson, 2000 U.S. Dist. LEXIS 3895 at *8 n.14; Santiesteban, 61 F. Supp. 3d at 235; Wanamaker, 907 F. Supp. at 534; Pennington, 261 F.3d at 1269; Hitt, 301 F.3d at 246; Keeton, 429 F.3d at 263; Borum, 2014 WL 3845938 at *19-20.

Here, as the district court properly concluded below, there is no question as to whether or not the Congregation's August 5th rescission was valid under the above referenced factors, and thus, precludes Shultz from relying on her aborted termination to satisfy the "adverse employment action" element of her *prima facie* burden under Title VII. Indeed, the August 5th letter specifically states: “The Congregation has reevaluated its plans to eliminate your position as Program Director, and *hereby rescinds its termination of your employment.* Please consider the contents of our letter to you dated July 21, 2015 *null and void, and effective immediately, your employment by Congregation Shearith Israel fully reinstated.*” (A19)(emphasis added) As the district court correctly noted, on its face, this letter (a) clearly and unconditionally rescinded Shultz's termination, (b) was effective immediately, and (c) completely retracted Shultz's planned termination before it went into effect, thereby leaving her in the exact same position, and receiving the exact same compensation and benefits that she had prior to July 21, 2015. (A100-A106)

Notably, Shultz did not assert any factual allegations in her TAC that would have called any of these observations into question, nor did her attorney dispute any

of these observations at oral argument on the Congregation's Rule 12(b)(6) motion before the district court. (See A57-A95) Thus, to be clear, there is currently no dispute that (a) the Congregation's August 5th retraction of Shultz termination was not conditioned upon Shultz's release of any claims and was effective immediately; (b) Shultz received the August 5th letter on that date; (c) prior to and following her receipt of the August 5th letter, Shultz remained employed in the exact same job title, receiving the exact same compensation and benefits, she had always received; and (d) even after Shultz stopped showing up for work, the Congregation continued to pay her the same weekly paychecks and provide her with the same exact benefits it had been providing to her all along, and only ceased doing so upon receiving a specific request to stop doing so by her attorney months after she stopped showing up for work. (A100-A106)

Consequently, for the exact same reasons the plaintiffs in the above-cited cases were precluded from proceeding with a discrimination claim based upon the allegation that their rescinded termination was motivated by a discriminatory purpose, Shultz here cannot proceed with and state a viable discrimination claim under Title VII that seeks to challenge as discriminatory her aborted termination. See Conkling, 2012 WL 2160439 at *10; Incarnato, 2006 WL 1330103 at *14; Cheshire, 2007 U.S. Dist. LEXIS 42633 at *6; Butler, 2009 WL 804722 at *13; Wilson, 2000 U.S. Dist. LEXIS 3895 at *8 n.14; Santiesteban, 61 F. Supp. 3d at 235; Wanamaker,

907 F. Supp. at 534; Pennington, 261 F.3d at 1269; Hitt, 301 F.3d at 246; Keeton, 429 F.3d at 263; Borum, 2014 WL 3845938 at *19-20.

Shultz has not cited to any case law that establishes otherwise. To this very date, Shultz has ***failed to cite a single case*** from this or any other Circuit that reached a different conclusion or would support her ridiculous suggestion that an employer can be subject to liability under Title VII for merely contemplating or communicating that it planned to make an employment decision, even if it changed its mind and retracted the contemplated employment action *before* it ever went into effect. The reason no such case has been cited is obvious: such a holding would be tantamount to eliminating the "adverse employment action" element of a plaintiff's *prima facie* burden on a Title VII discrimination claim, and subject employers to liability for alleged "discriminatory" plans or thoughts, which were never actually implemented and thus, never had a "materially adverse impact" on the terms and conditions of the plaintiff's employment.

Yet, as explained in greater detail below, this is precisely the ruling that Shultz is attempting to elicit from this Court. Accordingly, the Congregation respectfully requests that this Court affirm the district court's dismissal of Shultz's discrimination claim under Title VII.

**A. <u>The District Court Applied The Court Legal Standard To Conclude That Shultz's Factual Allegations Failed To Satisfy The "Adverse Employment Action" Element Of Her Title VII Claim Pursuant To Rule 12(b)(6)</u>**

In Point I(A) of her appellate brief, Shultz argues that the lower court "[m]isapplied the [s]tandard for [j]udging the [s]ufficiency of a Complaint," because, in <u>Littlejohn v. City of New York</u>, 795 F.3d 297 (2d Cir. 2015), this Court stated that "at the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim." (Pl.'s App. Br. at pp. 10-11 (quoting <u>Littlejohn</u>, 795 F.3d at 307-08))

In reality, however, this argument is devoid of merit on its face, as it clear from the very language Shultz quotes from <u>Littlejohn</u> that the Court in that case was addressing the issue of what type of factual allegations are sufficient to satisfy the fourth element of a *prima facie* discrimination case under Title VII at the 12(b)(6) stage – that element has *nothing* to do with the grounds upon which the Congregation's Rule 12(b)(6) motion was premised or the bases for the district court's dismissal of Shultz's Title VII claim. (A100-A106)

**B. <u>Contrary to Shultz's Assertion, The District Court's Decision Did Not Make Any "Factual Findings" In Connection With Its Decision That She Failed To State A Viable Pregnancy Discrimination Claim Under Title VII</u>**

Contrary to Shultz's assertion in Point I(B) of her appellate brief, the district court did not make any "factual findings" in order to determine that she had failed to plead sufficient factual allegations to satisfy the adverse employment action element

of her *prima facie* burden under Title VII. In fact, Shultz's argument to the contrary appears to be based upon either a misunderstanding of certain legal terms of art or an attempt to rewrite the above-cited case law so as to incorporate some nonsensical "motive" based standard into determining whether Shultz had actually suffered an cognizable "adverse employment action" under the law.

For instance, in her appellate brief, Shultz argues that the district court's determination that she had "failed to plead an actionable adverse employment action in connection with her termination" was (a) improperly premised upon a factual determination that the retraction was "unconditional" and "bona fide," and (b) that it erroneously disregarded her assertion that an unconditional retraction of a termination, which is not alleged to have had any impact on the terms and conditions of the plaintiff's employment, should be deemed "invalid" if it was motivated by a desire to avoid civil litigation, as opposed to a "sincere" change of heart. (Pl. App. Br. at pp. 12-13) Unfortunately for Shultz, neither assertion holds any weight.

With regard to Shultz's argument concerning the "unconditional" and "bona fide" nature of the August 5th rescission letter, it appears that this argument is premised upon a misunderstanding as to what these legal terms actually mean. Indeed, it is well-settled that an offer of reemployment is considered "bona fide" in this Circuit when the offer (a) is to the same position the subject employee previously held, and (b) is not conditioned upon the release of any claims. See Miano v. AC & R Advertising, 875 F. Supp. 204, 221 (S.D.N.Y. 1995)("[A]n offer of reinstatement is

understood to be unconditional where the discharged employee is not required to compromise his claims against the defendant as a prerequisite to returning to work")(citing Ford Motor Company v. EEOC, 458 U.S. 219, 241 (1982)); Jernigan v. Dalton Mgmt. Co., LLC, 819 F. Supp. 2d 282, 292 (S.D.N.Y. 2011) (noting that, in the Second Circuit, "an offer of reinstatement is understood to be unconditional where the discharged employee is not required to compromise his claims against the defendant as a prerequisite to returning to work" and holding that a letter from the employer, which "sets forth no conditions and says, quite clearly, that Defendants were 'willing to rehire [plaintiff] effective immediately' qualifies as an unconditional offer").

Here, there is no question that both of these elements have been met: (a) on August 5, 2015, Shultz was specifically advised that her termination had been rescinded and that she would continue to hold the same job title she had always held (A19; see also A38 at ¶79 [acknowledging that the August 5th letter advised Shultz that she was being reinstated to the exact same position she had always held]); and (b) this rescission was not conditioned upon Shultz's agreement to release any claims against the Congregation. See Jernigan, 819 F. Supp. 2d at 292. Thus, Shultz's argument that the district court made "factual findings" regarding the "unconditional" nature of the August 5th rescission is completely devoid of merit, as this conclusion was premised on the allegations in the TAC and the face of the documents referenced repeatedly therein. (A100-A106) The same is true for her argument regarding the

"bona fide" nature of the rescission, which is ultimately premised upon her attempt to impose some type of nonsensical motive-based standard into the "adverse employment action" element, under which an unconditional retraction of a contemplated employment decision, which is made prior to the subject decision ever going into effect, will nevertheless be deemed invalid if it is motivated by a desire to avoid civil litigation, as opposed to a "sincere" change of heart. (See Pl. App. Br. at pp. 12-13; see also A105)

However, as the district properly explained in its decision, this argument is entirely devoid of any support in the law:

> At oral argument, Plaintiff's counsel insisted that Defendants' letter rescinding the termination was not a "bona fide" offer of reinstatement. This argument fails for the same reasons discussed above. In light of the employer's letter unconditionally rescinding the termination, Plaintiff must allege specific *facts* plausibly showing that her termination was *not* genuinely being rescinded-either a change in her salary or title or some tangible, material adverse change in her employment conditions. She has failed to allege such facts. The bare allegation in the Complaint that the rescission was not "bona fide" is a legal conclusion, not a factual allegation. To the extent that Plaintiff's counsel is assuming that a "bona fide" rescission of a termination must be sincere or heartfelt-in the sense that the employer must subjectively *want* to rescind the termination and retain the employee-that assumption is unfounded under the law. An employer may validly rescind a termination merely to avoid liability, even begrudgingly, so long as the employer restores the employee to her position with no material change or consequence.

(A105)

The district court's conclusion on this issue is absolutely consistent with the approach adopted by every other court in this Circuit and elsewhere that has addressed the rescission issue, Conkling, 2012 WL 2160439 at *10; Incarnato, 2006 WL 1330103 at *14; Cheshire, 2007 U.S. Dist. LEXIS 42633 at *6; Butler, 2009 WL 804722 at *13; Wilson, 2000 U.S. Dist. LEXIS 3895 at *8 n.14; Santiesteban, 61 F. Supp. 3d at 235; Wanamaker, 907 F. Supp. at 534; Pennington, 261 F.3d at 1269; Hitt, 301 F.3d at 246; Keeton, 429 F.3d at 263; Borum, 2014 WL 3845938 at *19-20; and there is nothing about this determination that required a "finding of fact," as is apparent from the above-quoted language.

To date, Shultz has not offered a single case that would support her position that an unconditionally aborted employment action, which never went into effect and thus, had zero impact on the terms and conditions of the plaintiff's employment, will nevertheless qualify as a cognizable "adverse employment action" under Title VII if the employer's motivation for rescinding the employment action was simply to avoid civil litigation (as Shultz suggests was the case here). (See A100-106; see also Pl. App. Br. at Point I(B)(2)-(4)). In fact, the only real legal support Shultz has offered for her position (albeit in a different section of her appellate brief) is her citation to Miano v. AC & R Advertising, 875 F. Supp. 204 (S.D.N.Y. 1995), which she cites for the proposition that an offer of reinstatement must be made in "good faith" in order to be valid. However, Miano is distinguishable from this case for a number of reasons, and ultimately supports the district court's ruling below.

First, in Miano, the employer did not rescind a contemplated termination *before* it ever went into effect, thereby preventing the plaintiff from suffering any "material change" to the terms and conditions of his employment, as was the case here. Rather, the employer in Miano had terminated the plaintiff and did not offer him a new position with the company until *over a year later*, resulting in over a year's worth of lost compensation, benefits, etc. Miano, 875 F. Supp. at 208-09. Thus, unlike the matter at hand, there was no question that the plaintiff in Miano had suffered a cognizable "adverse employment action." The issue was simply whether the offer of new employment cut off his damages under mitigation principles.[8] Id. at 220-24.

Second, unlike the case at hand, in Miano, there were a number of questions as to whether the position being offered to the plaintiff (*i.e.*, "Vice Chairman, Creative Director") was an entirely different position from the title he held prior to his termination (*i.e.*, "Executive Vice President, Vice Chairman and Director of Creative Services"), and whether the new title was one that was held by the subordinates in the department the plaintiff previously had supervised. See Miano, 875 F. Supp. at 221. Here, there is no question that Shultz was employed as the Program Director before she was advised of her upcoming termination, remained the Program Director between that date and the date of the Congregation's retraction of her termination, and continued as the Program Director after the termination was rescinded.

8 This distinction is discussed in greater detail in Point II(C) of this Brief, below.

Third (and most importantly), although Shultz is correct that the court in Miano did suggest in passing that an offer of reemployment, which is made in "bad faith," *might* not operate to cut off a plaintiff's damages when used for mitigation, Id. at 223, she conveniently omits the fact that (a) the court ultimately declined to rule on that question, and (b) when describing what might potentially constitute "bad faith" in this context, the court pointed to statements allegedly made by the employer when the offer was made to the plaintiff to the effect of, if he accepted, he would actually just be "isolated and would not be allowed to perform any function upon returning to [the company]." Id.

Notably, no such allegations are asserted in this case: Shultz is not alleging that the Congregation's retraction was made in "bad faith" because she actually was not reinstated to the same position or was otherwise stripped of all job functions following her receipt of the August 5th rescission letter. Indeed, these are precisely the allegations the district court noted were absent from her pleading when it rejected her attempt to simply slap a "bad faith" label on the Congregation's retraction of her termination in a conclusory manner, explaining:

> Plaintiff must allege specific *facts* plausibly showing that her termination was *not* genuinely being rescinded-either a change in her salary or title or some tangible, material adverse change in her employment conditions. She has failed to allege such facts. The bare allegation in the Complaint that the rescission was not "bona fide" is a legal conclusion, not a factual allegation.

(A105)

In fact, Shultz is not actually challenging this observation on appeal; she is just asserting that the Congregation's rescission of her termination was not "bona fide" because -- although it was unconditional, implemented immediately, and her job title, duties and compensation never changed -- she subjectively believes that it was motivated by a desire to avoid litigation over an employment decision that it had yet to implement, and did not come with an affirmative "expression of remorse." (See A81 at 4-16; A105)

This argument is simply devoid of merit, and Shultz has not identified any legal support for her attempted extension of the Miano court's limited discussion of actual bad-faith reemployment offers (which was focused on whether the plaintiff was actually going to be reinstated to the same position) to situations involving an employer's unconditional rescission of termination before it even goes into effect and results in the employee keeping the exact same position with no alleged change to the terms and conditions of her employment (thereby negating the question of whether it was "genuine" or "bona fide"), simply because the reason the employer took action to prevent a change to its employee's terms and conditions of employment was because it wanted to avoid costly litigation. Indeed, adopting Shultz's proffered motive-test would be tantamount to disregarding decades of precedent holding that the fundamental question in the "adverse employment action" context is whether or not the employee's terms and conditions of employment were actually adversely impacted in a material way – and shift the focus onto the employer's *motivation* for taking

action to *prevent* such a materially adverse change to the terms and conditions of an individual's employment via unconditionally rescinding a proposed termination before it went into effect. There is absolutely no legal or rationale basis for adopting this position under the circumstances, and the district court's refusal to do so in its decision below should, therefore, be affirmed.

### C. Shultz's Reliance On Case Law Regarding An Individual's Ability To "Reasonably Reject" An Offer Of Reemployment Is Misplaced

In Point I(B)(1) of her appellate brief, Shultz attempts to invoke a series of wholly distinguishable cases involving the impact of an employer's offer to rehire an employee who has already been terminated (and thus, undoubtedly suffered a "material adverse action" in the form of lost pay, benefits, etc.), with the situation here, which involves a unilateral and unconditional retraction of a planned employment decision before it ever went into effect.

First, as was explained in the Congregations' motion papers below, there is a material distinction in the law between: (a) *rescinding* a termination decision *before* its effective date and, thus, precludes the subject employee from a discrimination claim based upon the allegation that her rescinded termination was motivated by a discriminatory purpose, Conkling, 2012 WL 2160439 at *10; Incarnato, 2006 WL 1330103 at *14; Cheshire, 2007 U.S. Dist. LEXIS 42633 at *6; Butler, 2009 WL 804722 at *13; Wilson, 2000 U.S. Dist. LEXIS 3895 at *8 n.14; Santiesteban, 61 F. Supp. 3d at 235; Wanamaker, 907 F. Supp. at 534; Pennington, 261 F.3d at 1269;

Hitt, 301 F.3d at 246; Keeton, 429 F.3d at 263; Borum, 2014 WL 3845938 at *19-20; and (b) making a bona fide offer to *reinstate* an employee to her former position *after* she has already been terminated, which effectively cuts off the affected employee's ability to recover back pay following the date of the offer. Ford Motor Company, 458 U.S. at 241; Miano, 875 F. Supp. at 221; Jernigan, 819 F. Supp. 2d at 292. The basis for this distinction is simple: in the first category of cases, the employer never actually took an *adverse employment action* against the plaintiff, whereas in the second category, the employee was, indeed, subjected to an adverse employment action and the employer's offer of reemployment pertains to the *mitigation of damages*.

Here, there is no question that Shultz's claims against the Congregation fall squarely within the first category, as her termination was rescinded on August 5th (A19), which was more than 9 days *before* her scheduled termination date. (A36 at ¶62) Thus, at the outset, it should be noted that her reliance on cases involving plaintiffs who were actually terminated has no bearing on whether she satisfied the "adverse employment action" element of her *prima facie* burden under Title VII based upon the factual allegations set forth in the TAC.

Second, her reliance on these cases for the proposition that the district court failed to consider whether she "reasonably rejected" the Congregation's rescission of her termination is misplaced, as that particular issue is not applicable here and only arises where the employer has *already* terminated the plaintiff and there is no longer

an existing employer-employee relationship between the parties. This is essentially because the absence of an existing employment relationship results in a situation in which the plaintiff actually *does* have to "accept" the new job offer before resuming his employment, thereby facilitating the mitigation-related inquiry into whether the plaintiff's rejection of that job offer was "reasonable." See Ford Motor Company, 458 U.S. at 241; Miano, 875 F. Supp. at 221; Jernigan, 819 F. Supp. 2d at 292.

Here, Shultz was not terminated and then *offered* a comparable position at some point in the future. The Congregation simply aborted the termination before it was even implemented, and thus, there was nothing for Shultz to "accept" or "reject" to begin with. To hold otherwise would not only be completely nonsensical, but it would be contrary to public policy and would be no different than ruling that an employee who is advised that he is going to be reassigned from his company's Manhattan office to its office in Albany, NY in three weeks, but then told the very next day that the decision-makers changed their mind and that no such transfer was going to take place, could nevertheless state a viable discrimination claim based upon an "involuntary transfer" by waiting three weeks and then driving to Albany, showing up for work at his employer's Albany location, and proclaiming that his employer's attempt to "un-transfer" him was not a "bona fide" offer to remain employed in the Manhattan office, because he would have to continue working with the same individuals who had proposed his transfer in the first place, so he was therefore transferred against his will. This is an absolutely absurd argument, and, yet, with the

exception of the “adverse employment action” being different (termination vs. an involuntary transfer to a distant office), it is the exact same fact pattern alleged in Shultz’s TAC.

Finally, even if this Court found that the "reasonable rejection" inquiry is applicable to cases that do not involve actual job offers to reject, Shultz does not allege sufficient factual allegations to plausibly suggest that her "rejection" of the Congregation's rescission was "reasonable" under the standard she is attempting to invoke, which objectively asks whether a "reasonable person in plaintiff's position would refuse the offer," and, in the context of a Rule 12(b)(6) motion, would require sufficient factual allegations, which, if true, would show that the position offered was either not comparable to the plaintiff's prior position, or that the work environment was filled with such "unremitting hostility from the employer," no reasonable person would accept an offer to work there. See Miano, 875 F. Supp. at 221 (discussing the standard for determining whether a job offer was "reasonably rejected" and the cases in which it has been applied).

Here, as the district court correctly noted below, there are no allegations in this case that Shultz was subjected to a series of discriminatory comments or a barrage of some other form of discriminatory treatment by a particular individual while she was employed by the Congregation, thereby rendering her "rejection" of an offer to return to work under the supervision of such individual "reasonable." (A104) Indeed, as the district court correctly observed, "[a]part from the termination itself (which was

rescinded before it took effect), the facts alleged in this case are sparse" (A104), and once her string of conclusory allegations is properly removed from consideration, the only factual allegations that pertain to events following Shultz's receipt of the August 5th letter are:

> (1) she overheard a phone call in which Reiss 'disparaged' her and her lawyers; (2) Reiss required her to complete 'her regular and customary work assignments ahead of schedule'; (3) the Congregation removed her name from a wall and a synagogue membership newsletter, but later listed her in newsletters and stated that she continued to be employed; and (4) Soloveichik and Lustig did not speak to her and 'noticeably failed to congratulate her on her pregnancy.' (Compl. ¶¶ 82-107.) Plaintiff does not allege that the Congregation changed her title, salary, or benefits, nor does she allege any gap in her pay. She does not plead any factual context about whether she typically spoke with Soloveichik and Lustig in the course of her employment, and thus, whether it was unusual not to speak to them. She does not explain how Defendants made 'clear ... that her continued employment was conditional.' (Compl. ¶ 81.) And, while she asserts that she knew 'that Defendants would use every opportunity to berate and shame her,' she does not allege facts, beyond those listed above, to explain or support that assertion. (Compl. ¶85)

(A104)

Thus, contrary to her assertions in her appellate brief, Shultz has not alleged any actual facts suggesting that "the reoffer had no impact on the pattern and conduct of discrimination based on her pregnancy and in fact, the hostile environment continued to increase following the Reoffer letter" (Pl. App. Br. at p. 18), or that she was subjected to any "continued animus and attempts to humiliate and isolate her

resulted in placing her in a position to fail – not to perform the same job she had before her pregnancy was announced." (Id.) Indeed, a mere cursory review of the portions of the TAC to which she cites in support of these statements confirms that she is merely citing conclusory allegations in her pleading to support the conclusory proclamations in her appellate brief. (Compare Pl. App. Br. at p. 18; with A38-A40) As such, even if this Court were to adopt the "reasonable rejection" line of inquiry for this matter, Shultz has not asserted any factual allegations upon which a court could plausibly conclude that she "reasonably rejected" the Congregation's rescission of her termination.

Accordingly, this Court should affirm the district court's dismissal of Shultz's pregnancy discrimination claim under Title VII.

**D. Shultz's Arguments Regarding Her Ability To Satisfy The "Discriminatory Inference" Prima Facie Element Of Her Discrimination Claim Are Completely Irrelevant, As That Element Was Neither The Basis For The Congregation's 12(b)(6) Motion, Nor The Grounds Upon Which The District Court Dismissed Her Pregnancy Discrimination Claim Under Title VII**

In each of the remaining sections of Shultz's appellate brief that pertain to her pregnancy discrimination claim, *i.e.*, Points I(B)(2) through (4), Shultz raises various arguments that have no bearing on the issues before this Court, including: (a) that she has alleged factual allegations to establish an "inference" of discrimination (Pl. App. Br. at pp. 19-23); (b) that she is confident she will be able to establish "pretext" at the third stage of the McDonnell Douglas burden-shifting framework at trial (Id. at 23-

26); and (c) that the "temporal proximity" between her pregnancy announcement and the date on which she was initially informed of the Congregation's planned reorganization further bolsters her ability to establish the "discriminatory inference" element of her prima facie burden. (Id. at pp. 26-27.)

With regard to these arguments, it suffices to say that the Congregation's Rule 12(b)(6) motion was not premised upon Shultz's inability to satisfy the "discriminatory inference" element of her *prima facie* burden at the pleading stage, nor was it premised upon her ability or inability to establish "pretext" at trial. See ECF Docket Entry No. 29. Nor were such issues the grounds upon which the district court granted the Congregation's motion. (See A96-A110) Notably, Shultz does not cite a single case in her appellate brief that would suggest a plaintiff's ability to allege sufficient facts to satisfy one element of her *prima facie* burden (*e.g.*, the "inference" element) negates her complete failure to plead sufficient facts to satisfy each of the remaining *prima facie* elements. (*See* Pl. App. Br. at pp. 10-31)

Accordingly, this Court should disregard these arguments as nothing more than an attempt by Shultz to gloss over the fatal flaw in her discrimination claim under Title VII – *i.e.*, that it is premised upon a termination that never took place – and affirm the district court's Order and Decision below.

## II. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S HOSTILE WORK ENVIRONMENT CLAIM, BECAUSE SUCH A CLAIM WAS NEITHER PLED, NOR ADDRESSED, BELOW AND IS ONLY BEING ASSERTED NOW FOR THE FIRST TIME ON APPEAL, AND BECAUSE THE FACTUAL ALLEGATIONS SET FORTH IN SHULTZ'S THIRD AMENDED COMPLAINT DO NOT GIVE RISE TO A VIABLE "HOSTILE WORK ENVIRONMENT" CLAIM AS A MATTER OF LAW

Shultz's assertion in her appellate brief that she has stated a viable "hostile work environment" claim under Title VII is truly astonishing, as no such claim was asserted in her original Complaint (ECF Docket Entry No. 1), her First Amended Complaint (ECF Docket Entry No. 14), her Second Amended Complaint (ECF Docket Entry No. 21), or her TAC (A26-A56). Nor was such a claim raised in opposition to the Congregation's Rule 12(b)(6) motion (ECF Docket Entry No. 35), or addressed by the district court in the decision currently on appeal (A96-A110). She is, quite literally, attempting to assert this claim for the *first time* on appeal via filing her appellate brief, which is simply not permissible.[9] See e.g., Baker v. Dorfman, 239 F.3d 415, 420-21 (2d Cir. 2000)(arguments raised for the first time on appeal should not be considered); Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 166 (2d Cir. 2003) (same); Schmidt v.

---

[9] Indeed, as set forth above, Shultz filed her TAC pursuant to a joint stipulation in which she specifically agreed that the TAC would merely assert the same pregnancy discrimination claims under Title VII that had been asserted under the NYSHRL up to that point in time; that the parties would rely on their previously-filed motion papers "with respect to Plaintiff's Title VII claims and such claims only survive to the extent the NYSHRL claims in the Second Amended Complaint survive Defendants' motion to dismiss." (A10-A11) Notably, there was no "hostile work environment" claim asserted under the NYSHRL in her Second Amended Complaint, which just further demonstrates the fact that this claim is being raised for the first time on appeal.

Polish People's Republic, 742 F.2d 67, 70 (2d Cir. 1984)(parties cannot assert new claims for the first time on appeal).

Accordingly, the Court should disregard Shultz's argument regarding her purported "hostile work environment" claim in its entirety.[10]

## III. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S CONSTRUCTIVE DISCHARGE CLAIM, BECAUSE THE FACTUAL ALLEGATIONS SET FORTH IN SHULTZ'S THIRD AMENDED COMPLAINT DO NOT GIVE RISE TO A VIABLE CONSTRUCTIVE DISCHARGE CLAIM AS A MATTER OF LAW

This Court should affirm the district court's dismissal of Shultz's constructive discharge claim under Title VII (Count Six of the TAC), because the factual allegations set forth in her TAC simply do not come close to satisfying the stringent standard applicable to such claims.

A constructive discharge occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced to involuntarily resign." Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (internal quotation marks omitted). In order to state a claim for a constructive discharge, a plaintiff must allege sufficient facts to plausibly show

---

[10] Even if this Court were to entertain her arguments regarding her purported "hostile work environment" claim, such arguments fail as a matter of law for the same reasons her constructive discharge claim (addressed below) fail. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (discussing standards for both hostile work enivronment and constructive discharge and how they overlap); see also Mills v. S. Conn. State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) (disparaging remarks and being "shunned" by colleagues does not give rise to a hostile work environment claim); Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (changes in job assignments do not typically give rise to a claim under Title VII).

that: (a) the "'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign,' and (b) the employer "deliberately" created such intolerable working conditions with the intention of "forcing the plaintiff to quit." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000) (quoting Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987)).

Notably, with regard to the first prong, the level of severity and pervasiveness required to proceed with a constructive discharge claim is at least as high, if not higher, than that which is required to establish a "hostile work environment" claim. Id. at 72-74 (citing and discussing collection of cases). As such, it is well-settled that an employee's "subjective perceptions" do not govern a claim of constructive discharge. Cooper v. Wyeth Ayerst Lederle, 106 F. Supp. 2d 479, 496 (S.D.N.Y. 2000) (citing Gray v. York Newspapers, Inc., 957 F.2d 1070 (3d Cir. 1992) ("employee's subjective interpretation that continued employment would be uncomfortable and demeaning and would lead to demotion or termination in the future does not constitute a constructive discharge.").

In addition, "[t]he fact that an employee 'feels that the quality of [her] work has been unfairly criticized,' or that her working conditions were 'difficult or unpleasant,' is insufficient to support a constructive discharge claim." Nugent v. St. Luke's/Roosevelt Hosp. Ctr., 05-CV-5109, 2007 WL 1149979, at *48 (S.D.N.Y. Apr. 18, 2007) (quoting Stetson v. NYNEX Service Co., 995 F.2d 355, 360 (2d Cir.

1993)). Finally, it is well settled that allegations of being subjected to excessive scrutiny or ignored by a supervisor are insufficient to give rise to a viable hostile work environment claim – let alone satisfy the more stringent standard applicable to constructive discharge claims. See e.g., Chin v New York City Hous. Auth., 106 A.D.3d 443, 444 (1st Dept. 2013) (holding that allegations by an employee that she was "variously yelled at, subjected to the occasional offensive remark, required to perform what she regarded as undesirable clerical tasks, ... and [being] overworked and subjected to excessive scrutiny" were insufficient to justify a hostile work environment or retaliation claim); Etienne v. Wal-Mart Stores, Inc., 186 F. Supp. 2d 129, 136 (D. Conn. 2001) (dismissing constructive discharge claim, because "plaintiff's allegation that she was treated coldly … and that her supervisors would not look or speak to her was insufficient to find constructive discharge"); Drake v. Minnesota Min. and Mfg. Co., 134 F.3d 878, 882, 886-87 (7th Cir. 1998)(no constructive discharge where plaintiff alleged that no one at work would talk to him and that co-workers would leave the room when he entered); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 241, 244 (4th Cir. 1997), cert. denied, 522 U.S. 1116 (1998)(no constructive discharge when plaintiff was ignored by co-workers); Ardigo v. J. Christopher Capital, LLC, 2013 U.S. Dist. LEXIS 41740, 13-14 (S.D.N.Y. Mar. 25, 2013) (holding that plaintiff's allegation that he "overheard three mildly offensive statements[,]... is not sufficient ... to state a plausible hostile work environment claim," because it fails to satisfy the same "severe

and pervasive" standard that applies to constructive discharge claims); Cooper v. Wyeth Ayerst Lederle, 106 F. Supp. 2d 479, 496 (S.D.N.Y. 2000) ("employee's subjective interpretation that continued employment would be uncomfortable and demeaning and would lead to demotion or termination in the future does not constitute a constructive discharge."); Nugent v. St. Luke's/Roosevelt Hosp. Ctr., 05-CV-5109, 2007 WL 1149979, at *48 (S.D.N.Y. Apr. 18, 2007) ("[t]he fact that an employee 'feels that the quality of [her] work has been unfairly criticized,' or that her working conditions were 'difficult or unpleasant,' is insufficient to support a constructive discharge claim.") (quoting Stetson v. NYNEX Service Co., 995 F.2d 355, 360 (2d Cir. 1993)).

Here, Shultz's constructive discharge claim falls woefully short of the above-referenced standard. Indeed, according to the TAC, her constructive discharge claim is premised entirely on (a) alleged stray comments that the Congregation "had no problem having this [legal claim] out in the community" and that Shultz was "looking for a lottery ticket" (A38-A39 at ¶¶82-83); (b) Shultz's subjective perception that "Defendants would use every opportunity to berate and shame [her] while she was at work over the near future" and that her pregnancy "was something that brought shame to the members of the Congregation" (A39 at at ¶¶ 85, 89); and (c) her allegation that she was being asked to complete her customary work assignments ahead of schedule. (A40 at ¶91)

As a matter of law, even if all of these allegations were true (which is not the case), they are insufficient to sustain a viable constructive discharge claim. See Cooper, 106 F. Supp. 2d at 496; Nugent, 2007 WL 1149979 at *48; see also, Stetson, 995 F.2d at 360-361 (plaintiff's dissatisfaction with his work assignments, employer's criticism, and compensation could not sustain a constructive discharge claim); Spence v. Maryland Casualty Co., 995 F.2d 1147, 1156 (2d Cir. 1993) (employer intentionally criticizing employee's job performance and making conditional threats of termination were insufficient to support a constructive discharge claim); Martin v. Citibank, N.A., 762 F.2d 212, 221 (2d Cir. 1985) (a supervisor's unnecessary announcement to coworkers that the plaintiff had been polygraphed with respect to missing money at another branch and other conduct that interfered with the plaintiff's ability to perform her duties, including additional work assignments were insufficient to sustain a constructive discharge claim); Mills v. S. Conn. State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) (noting that disparaging remarks and being "shunned" by colleagues does not constitute adverse employment action, or give rise to a hostile work environment or constructive discharge claim); Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (changes in job assignments do not typically give rise to a viable claim under Title VII).

As such, Shultz has no basis to allege that she was constructively discharged from her position as Program Director. Consequently, this Court should affirm the district court's dismissal of her constructive discharge claim.[11]

## IV. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S TITLE VII RETALIATION CLAIM (COUNT NINE), BECAUSE THE THIRD AMENDED COMPLAINT FAILS TO IDENTIFY ANY COGNIZABLE "RETALIATORY ACTION" TAKEN AGAINST SHULTZ BY THE CONGREGATION

This Court should affirm the district court's dismissal of Shultz's retaliation claim under Title VII, because the purported "retaliatory conduct" the Congregation is alleged to have engaged in does not even come close to qualifying as actionable retaliation under the law. Indeed, in her TAC, Shultz alleges that the Congregation retaliated against her by making a public statement denying the allegations asserted in her initial Complaint and engaging in "a series of wrongful and damaging conduct," which include sending her bi-weekly paychecks, keeping her enrolled in the Congregation’s health plan, maintaining her biographical information on the Congregation’s website, and representing to the State unemployment insurance board that she is still employed by the Congregation, in an effort to continue with its “sham story” of Shultz’s continued employment. (A28 at ¶11; A52-A53 at ¶¶177-183)

---

[11] To the extent Shultz requests that this Court take "judicial notice" of the decision in her unemployment compensation matter, that decision was not part of the record below, involves a completely different standard than that which is applied here, and is entitled to no probative value in connection with this appeal. See e.g., Arroyo v. WestLB Admin., Inc., 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999) (noting that unemployment decisions have "minimal to no probative value," and typically should not be admitted or considered in discrimination suits because "the board has no special competence in deciding discrimination claims") (citations omitted).

To state a *prima facie* case of retaliation under Title VII an "employee must show that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employee took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." Malena, 866 F. Supp. 3d at 362 (citations omitted). To satisfy the adverse employment action requirement in the retaliation setting, the plaintiff must allege sufficient factual allegations, which, if true, would plausibly show that they were subjected to an employment action that was "material adverse to a reasonable employee." Hicks v. Baines, 593 F. 3d 159, 165 (2d Cir. 2010). This standard is met when the subject employment action is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Thus, not every single employment decision will amount to actionable retaliation: "Actions that are 'trivial harms' – *i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience' – are not materially adverse." Teppenvien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) (citations omitted).

Here, Shultz's retaliation claim fails because none of the alleged retaliatory acts alleged by Shultz would even come close to satisfying the "adverse action" element of her *prima facie* burden. For instance, with regard to the Congregation's public statement, which was made after Shultz stopped showing up for work and essentially

just denied the allegations asserted in her Complaint, there is nothing about this statement that could be deemed "retaliatory" in the legal sense, as the statement clearly constitutes nothing more than the Congregation's truthful, non-actionable opinion concerning the merits of the instant lawsuit. Given both the content and the context of the statement, it is absurd to argue that a “reasonable worker” would be dissuaded from filing a lawsuit under these circumstances – *she had already filed the lawsuit*. To hold otherwise would be tantamount to ruling that the filing of an answer in civil litigation on the public docket, which denies a plaintiff's allegations and asserts various affirmative defenses, could give rise to an independent retaliation claim under Title VII, which is facially absurd.

It is equally ridiculous to allege, as Shultz does here, that receiving compensation, health benefits, and a continued acknowledgement of employment somehow also amounts to actionable "retaliation," as there is nothing even remotely “adverse” about compensating or providing benefits to an employee. Indeed, under such a warped understanding of the law, every single employee of every single company could be deemed a victim of actionable “retaliation” at the end of every single pay period in which she receives her paycheck. The blatant absurdity of such a illogical proposition is not diminished in the slightest merely because Shultz voluntarily decided to stop showing up for work. To hold otherwise would be equivalent to suggesting that paying an individual her weekly paycheck,

notwithstanding her absence from the office, could be deemed actionable retaliation under Title VII.

Accordingly, this Court should affirm the district court's dismissal of Shultz's retaliation claim under Title VII pursuant to Rule 12(b)(6).

## V. THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL OF SHULTZ'S FMLA CLAIM, BECAUSE SHE HAS NOT OFFERED ANY GROUNDS FOR A REVERSAL ON APPEAL

As the district court properly recognized in its decision below, Shultz's FMLA claim is premised entirely upon her argument that she was actually terminated from her position with the Congregation, which interfered with her ability to take FMLA leave down the road. (A108) In fact, as the district court correctly noted, Shultz had not offered any "other argument as to how Defendants denied her benefits protected by the FMLA" (Id.) Notably, on appeal, Shultz does not dispute this characterization of her FMLA claim, and instead confirms its accuracy in a footnote in which she simply asserts that the district court erred by dismissing her FMLA "for the same reasons that [Shultz] .. alleged a viable discrimination claim based on an actual or constructive termination or a hostile work environment." (Pl.'s App. Br. at p. 36)

As such, in light of Shultz's failure to offer any other arguments as to the viability of this claim on appeal, this Court should affirm the district court's dismissal

of her FMLA claim for the same reasons such a result is warranted as to her Title VII claims.[12]

## CONCLUSION

For the foregoing reasons, the Congregation respectfully requests that this Court affirm the district court's Order and Decision on the Congregation's Rule 12(b)(6) motion in full.

Dated: New York, New York
February 23, 2017

Respectfully Submitted,

AKERMAN, LLP

By: /s/ *Vincent M. Avery, Esq.*
Vincent M. Avery, Esq.
Sarir Z. Silver, Esq.
Attorneys for Defendants-Appellees
666 Fifth Avenue, 20th Fl.
New York, NY 10103

[12] In her appellate brief, Shultz appears to take issue with the district court's grant of her request for an opportunity to amend her pleading (yet again) if it granted the Congregation's motion. (See Pl.'s App. Br. at pp. 39-41) This is truly a remarkable argument for Shultz to be advancing in light of the fact that it was her attorney who specifically requested the opportunity to amend her pleading if the district court was inclined to grant the Congregation's motion, and it was the Congregation that strenuously objected to providing Shultz a fifth bite at the apple via allowing her to file yet another amended complaint. (A94-A95) As such, her attempt to attack the district court's rationale for allowing her an opportunity to amend her pleading is disingenuous and directly contradicts her position below.

# CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,672 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: New York, New York
February 23, 2017

Respectfully Submitted,

AKERMAN, LLP

By: /s/ *Vincent M. Avery, Esq.*
Vincent M. Avery, Esq.
Sarir Z. Silver, Esq.
Attorneys for Defendants-Appellees
666 Fifth Avenue, 20th Fl.
New York, NY 10103