# 16-3140-cv

# United States Court of Appeals
## for the
## Second Circuit

ALANA SHULTZ,

*Plaintiff-Appellant,*

– v. –

CONGREGATION SHEARITH ISRAEL of the City of New York, THE SPANISH
AND PORTUGESE SYNAGOGUE, MEIR SOLOVEICHIK, In his personal and
professional capacities, MICHAEL LUSTIG, In his personal and professional capacities,
BARBARA REISS, In her personal and professional capacities,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

WIGDOR LLP
*Attorneys for Plaintiff-Appellant*
85 Fifth Avenue
New York, New York 10003
(212) 257-6800

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ............................................................1

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT ......................................................................................2

I.  SHULTZ PLED AN ADVERSE EMPLOYMENT ACTION BECAUSE SHE WAS FIRED ON JULY 21, 2015 ...............................................2

    A.  Shultz Suffered an Adverse Action on July 21, 2015 When She Was Terminated ..........................................................................3

    B.  Shultz's Discriminatory Termination Claim Accrued On July 21, 2015 ...................................................................................4

    C.  Shultz Was an At-Will Employee and The Congregation Extended a Re-Offer of Employment .....................................................6

        1.  The Inclusion of Words Such As "Rescind" and "Void" in the Re-Offer Letter Does Not Create a *De Facto* Rescission ...........6

        2.  Despite Dicta in Case Law, The Only Proper Classification of the Congregation's August 5, 2015 Letter Is as a Re-offer of Employment .............................................................................7

            a.  Ticali v. Roman Catholic Diocese ...................................8

            b.  Conkling v. Brookhaven Sci. Assocs., LLC ....................8

            c.  Incarnato v. Tops Friendly Markets LLC ......................10

            d.  Wilson v. Consolidated Edison Co. ................................11

            e.  Santiesteban v. Nestle Waters North Am., Inc. .............11

            f.  Wanamaker v. Columbian Rope Co. ..............................12

D.     A Re-Offer of Employment Does Not Absolve an Employer of Discriminatory Conduct ........................................................12

E.     Shultz Rejected the Re-Offer Because It Was Not *Bona Fide* and Made In Good Faith and She Was Subject to Further Discrimination ..............................................................................14

II.     SHULTZ ALLEGED A CLAIM FOR CONSTRUCTIVE DISCHARGE AND HOSTILE WORK ENVIRONMENT ..................................................15

A.     Shultz's Hostile Work Environment With Aggravating Factors Supports A Constructive Discharge Claim .........................................15

1.     Nature and Effect of the Discriminatory Termination..............17

2.     Status of the Discriminatory Actors.........................................20

3.     Defendants Ignored Shultz's Discrimination Claims ..............20

4.     Claims for Hostile Work Environment or Constructive Discharge Should Be Determined On a Case By Case Basis ...21

B.     At a Minimum, Shultz Alleged a Hostile Work Environment............24

1.     Shultz's Work Environment Was Altered for the Worse Because of Her Pregnancy .......................................................25

2.     Shultz's Hostile Work Environment Claim Was Raised Before the District Court and Should Be Decided In This Appeal ......27

III.     THE CONGREGATION RETALIATED AGAINST SHULTZ BY ENGAGING IN A CAMPAIGN TO DISCREDIT HER ............................28

CONCLUSION ..............................................................................................30

ii

# TABLE OF AUTHORITIES

## Cases

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2002) ..........................................................................19

Ardigo v. J. Christopher Capital, LLC,
    12-cv-3627, 2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013) ..........................22

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).......................................................................................28

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000) ..........................................................................27

Booking v. Gen. Star Mgmt. Co.,
    254 F.3d 414 (2d Cir. 2001) .................................................................. 27, 28

Borum v. Ill. Cent. R.R., Co.,
    13-cv-12421, 2014 WL 3845938 (E.D. Mich. Aug. 5, 2014) .......................12

Burlington Indus., Inc. v. Ellerth,
    524 U.S. 742 (1998)........................................................................................20

Butler v. Potter,
    06-cv-3828, 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009)....................... 9, 10

Cheshire v. Paulson,
    04-cv-3884, 2007 WL 1703180 (E.D.N.Y. June 12, 2007) ..................... 9, 10

Chin v. New York City Hous. Auth.,
    106 A.D.3d 443 (1st Dept. 2013) ........................................................... 22, 23

Conkling v. Brookhaven Sci. Assocs., LLC,
    10-cv-4164, 2012 WL 2160439 (E.D.N.Y. June 12, 2012) ......................8, 9

Cooper v. Wyeth Ayerst Lederle,
    106 F. Supp. 2d 479 (S.D.N.Y. 2000) ...........................................................23

Delaware State Coll. v. Ricks,
    449 U.S. 250 (1980).......................................................................................5

Doe v. Columbia Univ.,
    831 F.3d 46 (2d Cir. 2016) ..........................................................................2

Drake v. Minnesota Min. and Mfg. Co.,
    134 F.3d 878 (7th Cir. 1998) .....................................................................23

Early v. Wyeth Pharmaceuticals, Inc.,
    603 F. Supp. 2d 556 (S.D.N.Y. 2009) ......................................................15

EEOC v. Univ. of Chicago Hosp.,
    275 F.3d 326 (7th Cir. 2002) .....................................................................21

Etienne v. Wal-Mart Stores, Inc.,
    186 F. Supp. 2d 129 (D. Conn. 2001) .......................................................23

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998).....................................................................................20

Feingold v. N.Y.,
    366 F.3d 138 (2d Cir. 2004) ........................................................................5

Green v. Brennan,
    136 S. Ct. 1769 (2016)............................................................... 4, 5, 15, 21

Harris v. Forklift Systems, Inc.,
    510 U.S. 17 (1993).......................................................................................25

Hicks v. Baines,
    593 F. 3d 159 (2d Cir. 2010) ............................................................... 28, 29

Hitt v. Connell,
    301 F.3d 240 (5th Cir. 2002) .....................................................................12

Incarnato v. Tops Friendly Markets LLC,
    04-cv-5699T, 2006 WL 1330103 (W.D.N.Y. 2006)....................................10

Jernigan v. Dalton Management Co., LLC,
    819 F. Supp. 2d 282 (S.D.N.Y. 2011) ............................................................13

Keeton v. Flying J, Inc.,
    429 F.3d 259 (6th Cir. 2005) ........................................................................12

Laster v. City of Kalamazoo,
    746 F.3d 714 (6th Cir. 2014) ................................................................. 20, 21

Miano v. AC&R Advertising Inc.,
    875 F. Supp. 204 (S.D.N.Y. 1995) ................................................................14

Mills v. S. Conn. State Univ.,
    08-cv-1270, 2011 WL 3490027 (D. Conn. Aug. 10, 2011) ..........................26

Mills v. S. Conn. State Univ.,
    519 F. App'x 73 (2d Cir. 2013) ....................................................................26

Munday v. Waste Management of North America, Inc.,
    126 F.3d 239 (4th Cir. 1997) ........................................................................23

Munday v. Waste Management of North America, Inc.,
    522 U.S. 1116 (1998) ....................................................................................23

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.,
    05-cv-5109, 2007 WL 1149979 (S.D.N.Y. Apr. 18, 2007) ..........................23

Pennington v. City of Huntsville,
    261 F.3d 1262 (11th Cir. 2001) ....................................................................12

Pennsylvania State Police v. Suders,
    542 U.S. 129 (2004)......................................................................................25

Potash v. Florida Union Free Sch. Dist.,
    972 F. Supp. 2d 557 (S.D.N.Y. 2013) ..........................................................26

Redd v. New York Div. of Parole,
    678 F.3d 166 (2d Cir. 2012) ................................................................. 17, 18

Santiesteban v. Nestle Waters North Am., Inc.,
    61 F. Supp. 3d 221 (E.D.N.Y. 2014) ...................................................... 11, 12

Schiano v. Quality Payroll Sys., Inc.,
    445 F.3d 597 (2d Cir. 2006) ..........................................................................22

Spence v. Maryland Casualty Co.,
    995 F.2d 1147 (2d Cir. 1993) ............................................................... 23, 24

Tencza v. TAG Court Square, LLC,
    10-cv-3752, 2013 WL 2449178 (S.D.N.Y June 6, 2013) ..............................7

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) ..........................................................................28

Ticali v. Roman Catholic Diocese,
    41 F. Supp. 2d 249 (E.D.N.Y. 1999) ..............................................................8

Ticali v. Roman Catholic Diocese,
    201 F.3d 432 (2d Cir. 1999) ............................................................................8

Vance v. Ball State Univ.,
    133 S. Ct. 2434 (2013) ............................................................................ 24, 25

Walsh v. N.Y.C. Hous. Auth.,
    828 F.3d 70 (2d Cir. 2016) ..................................................................... 15, 16

Wanamaker v. Columbian Rope Co.,
    907 F. Supp. 522 (N.D.N.Y. 1995) ........................................................ 12, 30

Wat Bey v. City of New York,
    99-cv-03873, 2013 WL 12082743 (S.D.N.Y. 2013) .....................................14

Whidbee v. Garzarelli Food Specialties, Inc.,
    223 F.3d 62 (2d Cir. 2000) ............................................................................25

Williams v. New York City Hous. Auth.,
    154 F. Supp. 2d 820 (S.D.N.Y. 2001) ...........................................................19

Wilson v. Consolidated Edison Co.,
  96-cv-7546, 2000 WL 335733 (S.D.N.Y. Mar. 30, 2000) ............................11

Zinaman v. Kingston Reg. Sr. Living Corp.,
  11-cv-388, 2014 WL 282633 (N.D.N.Y. 2014) ...........................................13

## **Other Authorities**

Black's Law Dictionary (10th ed. 2014) ..............................................................6, 7

## PRELIMINARY STATEMENT

Plaintiff-Appellant Alana Shultz ("Shultz") respectfully submits this reply brief in further support of her appeal of the August 15, 2016 Order dismissing Shultz's claims under Title VII of the Civil Rights Act ("Title VII") and the Family Medical Leave Act ("FMLA") in their entirety and granting the motion for dismissal pursuant to Rule 12(b)(6) of Defendants-Appellees Congregation Shearith Israel of the City of New York, the Spanish and Portuguese Synagogue ("Congregation"), Meir Soloveichik ("Rabbi Soloveichik"), Michael Lustig ("Lustig"), and Barbara Reiss ("Reiss") (collectively, "Defendants" or "Congregation").

## SUMMARY OF THE ARGUMENT

Shultz commenced litigation against her former employer alleging pregnancy discrimination under Title VII because she was fired just days after she told her supervisors that she was pregnant. Unaided by *any* evidence except for the allegations in the complaint and the Defendants' motion to dismiss, the District Court committed reversible error by holding that Shultz's "termination itself . . . was rescinded before it took effect," and therefore, Shultz failed to *plausibly allege* an adverse employment action under Title VII. (A-104). Alternatively, the District Court erred in holding that the factual allegations failed to state a

1

constructive discharge claim, and failed to determine whether these allegations independently stated a hostile work environment claim. (A-106-07).

The District Court failed to review the complaint pursuant to the pleading standards applied to employment discrimination claims and imposed its own assessment of the veracity of Shultz's facts by "evaluat[ing] the truth as to what really happened." Doe v. Columbia Univ., 831 F.3d 46, 59 (2d Cir. 2016). In a departure from a plethora of applicable case law, the District Court made determinations reserved for the trier of fact without considering the context of the factual allegations, in a light most favorable to Shultz. Shultz is entitled to proceed to discovery on her claims and force Defendants to furnish a non-discriminatory motivation for their decision to fire her. For the reasons detailed below, Shultz respectfully requests that the District Court's decision be reversed in its entirety.

## ARGUMENT

## I.  SHULTZ PLED AN ADVERSE EMPLOYMENT ACTION BECAUSE SHE WAS FIRED ON JULY 21, 2015

Rather than assessing whether Shultz presented minimal evidence that she was fired and that the underlying motivations for her firing were unlawfully based on her pregnancy, the District Court erroneously ruled that the critical issue at this motion to dismiss stage was whether her "termination claim [survives] in light of the Congregation's rescission letter and subsequent conduct." (A-101-02). Clearly, the District Court merged the question as to whether Shultz reasonably

rejected an offer of re-employment (a legal determination for the trier of fact) with the question of whether she properly alleged an adverse employment action for purposes of pleading an employment discrimination claim. These questions are separate legal issues and require independent analyses. Unsurprisingly, by entangling the two questions, the District Court failed to properly consider Shultz's allegations in connection with her claims.

### A. Shultz Suffered an Adverse Action on July 21, 2015 When She Was Terminated

On July 21, 2015, on her first regular day back at work after disclosing her pregnancy, Shultz was summoned to a meeting with the head Rabbi, Defendant Soloveichik, the executive director of the Congregation, Defendant Reiss, and a Congregation Board member, Defendant Lustig. It is undisputed that Defendants fired Shultz at this meeting. (A-33-36). When Defendants fired Shultz, they simultaneously handed her a severance agreement. (A-37). The proposed severance offered Shultz six weeks of pay if she waived all her legal rights and if she agreed that her last day in the office would be August 14, 2015. (Id.). At the meeting, Shultz took the copy of the severance agreement but agreed to none of the proposed conditions. (Id.). Thereafter, Shultz did not discuss the firing or proposed severance with the Defendants, and instead, sought legal advice and retained counsel. (Id.).

**B.**   **Shultz's Discriminatory Termination Claim Accrued On July 21, 2015**

Defendants' entire defense to Shultz's claims is that she was never "really" fired.  Specifically, the Congregation believes that because Shultz's *last day of work* did not coincide with her firing date, July 21, 2015, Defendants were granted some sort of "grace period" between the day she was fired and her last day at the synagogue, during which they could change their minds.  Essentially, Defendants claim that Shultz's discrimination claims accrued only when she performed work on her last day, August 14, 2015.  Such an argument is without merit, and the District Court's decision adopting such a meritless argument is reversible error.

Defendants' argument fails because as the Supreme Court has established, an employee's claim accrues on the date of firing, not on a future date, such as an employee's last day at the office.  Specifically, in <u>Green v. Brennan</u>, 136 S. Ct. 1769 (2016), the Supreme Court restated long-settled precedent that a discrimination claim begins to run on the date that it is accrued, not on a future date that is "an inevitable consequence of the discriminatory act."  <u>Id.</u> at 1780.  To demonstrate its point, the Supreme Court provided two examples. First, it explained:

> [A] limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim. In *Ricks,* for example, the Court considered the discrimination claim of a college faculty member who was denied tenure and given a 1-year "terminal" contract for his last year teaching. **The plaintiff's claim accrued-and he could have**

4

**sued-when the college informed him he would be denied tenure and gave him "explicit notice that his employment would end" when his 1-year contract expired.** The Court held that the limitations period began to run on that date, and not after his 1-year contract expired. That final year of teaching was merely an inevitable consequence of the tenure denial the plaintiff claimed was discriminatory.

Green, at 1780 (quoting Delaware State College v. Ricks, 449 U.S. 250, 258 (1980)) (emphasis added). Similarly, Shultz was fired on July 21, 2015 when Defendants gave her "**explicit notice that [her] employment would end.**" Undeniably, Shultz could have filed charges with the EEOC on that date. Second, the Supreme Court in Green explained:

If an employee gives "two weeks' notice"- telling his employer he intends to leave after two more weeks of employment - the limitations period begins to run on the day he tells his employer, not his last day at work….A notice rule flows directly from this Court's precedent…**an ordinary wrongful-discharge claim accrues-and the limitations period begins to run- when the employer notifies the employee he is fired, not on the last day of his employment**.

Id. at 1782 (quotations and citations omitted) (emphasis added).

Under the precedent set forth in Green, Shultz's pregnancy discrimination claim accrued on July 21, 2015 because she was fired that day. "Termination" is indisputably a materially adverse action for purposes of pleading discrimination under Title VII. See Feingold v. N.Y., 366 F.3d 138, 152 (2d Cir. 2004). Thus, the complaint satisfies the third prong of a claim for discrimination because she was fired. The District Court committed reversible error by granting Defendants'

motion to dismiss on the basis that Shultz failed to plead "adverse employment action" in connection with her firing on July 21, 2015.

### C. Shultz Was an At-Will Employee and The Congregation Extended a Re-Offer of Employment

The Congregation offered to re-employ Shultz after she was terminated. (A-38). As an at-will employee, Shultz had the right to accept or reject this re-offer of employment. Importantly, the extended re-offer does not negate Shultz's termination on July 21, 2015.

### 1. The Inclusion of Words Such As "Rescind" and "Void" in the Re-Offer Letter Do Not Create a *De Facto* Rescission

Shultz was an at-will employee and the Congregation had no absolute right to "rescind" or "revoke" its termination, much less force Shultz to accept an offer of re-employment. In the same way that the Congregation could not force Shultz to execute the severance agreement, it could not unilaterally declare that her discriminatory firing was "cancelled." The only option the Congregation had on August 5, 2015 was to extend an offer of re-employment to Shultz, which it did.

The short, but carefully worded, letter on August 5, 2015, included the phrases "notice of reinstatement" and "hereby rescinds its termination of your employment." (A-19). Despite such language, the Congregation had no right to "rescind," as rescission is an available remedy for parties under contract law where breach can provide a right to cancel contractual obligations. See generally Black's

6

Law Dictionary (10th ed. 2014) (Under the UCC, rescission is "utilized as a term of art to refer to a mutual agreement to discharge contractual duties.") (citation omitted); Tencza v. TAG Court Square, LLC, 10-cv-3752, 2013 WL 2449178 at *8-10 (S.D.N.Y June 6, 2013) (discussing statutory and contractual rights to the remedy of rescission in connection with plaintiffs' attempt to revoke their purchase of a condominium unit).

The Congregation had no basis to "cancel" its termination of Shultz – the firing was already a *fait accompli*. There was no contract agreement and Defendants had no right to revoke Shultz's termination or label it "void." The fact that the Congregation attempted to rescind the termination only reinforces that a termination had already taken place. The District Court committed reversible error by agreeing that the Congregation unilaterally vitiated the termination via the August 5, 2015 letter.

> **2. Despite Dicta in Case Law, The Only Proper Classification of the Congregation's August 5, 2015 Letter Is as a Re-offer of Employment**

Unfortunately, courts interchange the words "rescind" and "revoke" with the concepts of "re-offer" and "offer to re-employ" in cases alleging employment discrimination where either the former employee alleges that he had a reasonable basis to reject an offer of re-employment, or the employer uses a re-offer for purposes of narrowing a plaintiff's right to recover back pay under Title VII.

Alternating usage of these words and concepts is hazardous, as it can lead to misinterpretations of court decisions, and as here, mix concepts generally associated with contract remedies with employee discrimination claims.

Defendants repeatedly cite the same cases to support its argument. (Defendants' Opposition Brief ("Opp. Br.") at 17-22). As discussed below, these cases do not stand for the blanket proposition that Defendants contend.

### a.    Ticali v. Roman Catholic Diocese

Defendants cite a summary judgment decision, Ticali v. Roman Catholic Diocese, 41 F. Supp. 2d 249, 264 (E.D.N.Y. 1999), aff'd without opinion, 201 F.3d 432 (2d Cir. 1999), for the proposition that a retracted termination cannot satisfy the adverse employment action element of a discrimination claim under Title VII. (Opp. Br. at 19). Contrary to Shultz, the plaintiff in Ticali had an employment contract that provided for automatic annual renewals unless notice to terminate was provided no later than April 15. Id. at 257. The employer failed to give notice prior to April 15, and therefore, the contract automatically renewed. Id. In Ticali, the plaintiff was never terminated and the court analyzed the facts pursuant to the law of contracts. Id. As such, Ticali is not controlling here.

### b.    Conkling v. Brookhaven Sci. Assocs., LLC

Defendants cite Conkling v. Brookhaven Sci. Assocs., LLC, 10-cv-4164, 2012 WL 2160439 (E.D.N.Y. June 12, 2012) for the court's reference that, "a

8

termination that is rescinded with no other adverse consequences does not constitute an adverse employment action." (Opp. Br. at 19). In stark contrast to this action, the plaintiff in Conkling was transferred to another department for lower pay. The court in Conkling did not analyze whether a re-offer of employment was unconditional or made in good faith because the plaintiff "accepted the reinstatement/demotion" and remained employed by the defendant. Id. at *1. In fact, the court held that the plaintiff alleged an adverse employment action based on the transfer. Id. at *4. Such a decision fails to support the sweeping rule for which it is cited by Defendants.

In Conkling, the court contrasted the plaintiff's harmful transfer/demotion situation to cases where employees had not sufficiently demonstrated adverse consequences. Specifically, the court cited to two decisions, Butler v. Potter, 06-cv-3828, 2009 WL 804722 (E.D.N.Y. Mar. 26, 2009) and Cheshire v. Paulson, 04-cv-3884, 2007 WL 1703180 (E.D.N.Y. June 12, 2007), also cited by Defendants. But, Butler and Cheshire involve distinct facts and holdings than this case, and fail to provide any support for Defendants' argument. (Opp. Br. at 17-18).

In Butler, the plaintiff simply stopped reporting to work without explanation. Thereafter, the employer sent the plaintiff a "proposed notice of termination" and instructed him to "report for a pre-disciplinary interview." 2009 WL 804722 at *4. Through a union hearing process, the plaintiff and the employer reached a

*settlement and as part of that agreement*, the "notice of termination" was expunged. Id. Citing Butler for the claim that courts hold that "unconditional rescissions" of a termination vitiate an adverse employment action is wrong.

Similarly, the facts in Cheshire are inapposite to this action because the plaintiff "was never terminated." 2007 WL 1703180 at *3. Rather, the employer had issued only a "proposal-to-terminate." Id.

### c.    Incarnato v. Tops Friendly Markets LLC

Defendants also cite to Incarnato v. Tops Friendly Markets LLC, 04-cv-5699T, 2006 WL 1330103 (W.D.N.Y. 2006). (Opp. Br. at 17). But Incarnato involved an analysis of whether the plaintiff reasonably rejected an offer of reinstatement. In Incarnato, the plaintiff requested vacation days and reduced hours. The plaintiff mistakenly believed her vacation days were approved, only to learn that she was fired in accordance with the company's absenteeism policy when she showed up for work. 2006 WL 1330103 at *2. That same day, realizing the misunderstanding, her employer offered her reinstatement. Id. Ultimately, however, the employer refused to grant the request for fewer hours per week and the parties engaged in a union grievance process. Although the Incarnato decision cites Ticali and uses the word "rescission," the analysis centered on whether the plaintiff unreasonably rejected the "offered re-employment." Id. at *4.

10

In contrast, the District Court never analyzed whether Shultz reasonably rejected the offer of re-employment since it erroneously accepted the Congregation's argument that the termination was a nullity.

### d.    Wilson v. Consolidated Edison Co

Defendants cite a footnote in <u>Wilson v. Consolidated Edison Co.</u>, 96-CV-7546, 2000 WL 335733 at *8 n.14 (S.D.N.Y. Mar. 30, 2000), for the "holding that an offer of reinstatement to the same position prior to the effective date of termination negates any adverse employment action as a matter of law."  (Opp. Br. at 18).  <u>Wilson</u> was decided at the summary judgment stage, and the court found that the termination was justified by the plaintiff's repeated failure to report to work or provide medical documentation for his leave.  2000 WL 335733 at *8 n.14.  Unlike this action, the parties in <u>Wilson</u> agreed that the plaintiff could return to work *as part of a settlement agreement*.  <u>Id.</u>  Such a material fact distinguishes the analysis in <u>Wilson</u> from this case, and fails to support Defendants' argument. Thus, the facts in <u>Wilson</u> are distinguishable and the court's comment in a footnote should not be given any weight.

### e.    Santiesteban v. Nestle Waters North Am., Inc.

Defendants cite <u>Santiesteban v. Nestle Waters North Am., Inc.</u>, 61 F. Supp. 3d 221 (E.D.N.Y. 2014) for the proposition that "a plaintiff cannot satisfy the adverse employment action element of a discrimination claim under Title VII or

the New York State Human Rights Law where the employment action in question was unconditionally rescinded by the employer." (Opp. Br. at 18). But, Santiesteban was decided at the summary judgment stage and the plaintiff was not terminated by his employer. Id. at 235. Rather, Santiesteban involved a rescinded write-up on safety procedures violation, and is therefore wholly distinguishable from the termination that occurred here.

### f.   Wanamaker v. Columbian Rope Co.

Defendants' reliance on Wanamaker v. Columbian Rope Co., 907 F. Supp. 522 (N.D.N.Y. 1995) is misplaced. (Opp. Br. at 18). In Wanamaker, the plaintiff's *retaliation* claim was not premised on a termination because he was terminated before his protected activity. Id. at 534. Thus, Wanamaker, and every other case cited by Defendants on this point,[1] is distinguishable from this action.

### D.   A Re-Offer of Employment Does Not Absolve an Employer of Discriminatory Conduct

An employer's termination of an employee is an event that qualifies as an "adverse employment action" for purposes of Title VII claims. A subsequent offer

---

[1]    The cases that Defendants cite to outside the Second Circuit either have no relevance to this case or involve a fact-specific exception to the general rule that a termination results in employer liability under Title VII. See Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001) (involving a denial of a promotion "quickly reversed"); Hitt v. Connell, 301 F.3d 240, 246 (5th Cir. 2002) (involving a "proposed notice of termination"); Keeton v. Flying J, Inc., 429 F.3d 259, 264 (6th Cir. 2005) (involving termination that lasted "only hours"); Borum v. Ill. Cent. R.R., Co., 2014 WL 3845938 at *19-20 (E.D. Mich. Aug. 5, 2014) (involving an ambiguous termination that was clarified within a couple days).

12

of re-employment is a different event, and separate from the first decision to terminate.  In cases involving re-offers, courts analyze whether the re-offer was "bona fide and made in good faith" and whether "a rejection is reasonable or justified . . . based upon the facts that were known by the plaintiff at the time [the plaintiff] made the decision."  <u>Zinaman v. Kingston Reg. Sr. Living Corp.</u>, 11-cv-388, 2014 WL 282633 at *1 (N.D.N.Y. 2014) (quotations and citations omitted) (<u>See</u> Plaintiff-Appellant's Brief at 13-19).

Contrary to well-settled precedent, the District Court committed reversible error by holding that the Congregation's subsequent decision to extend a re-offer of employment served to retroactively extinguish its earlier unlawful conduct. Whether Shultz reasonably rejected the Congregation's re-offer is a fact-intensive issue, which the District Court did not (and should not) decide on a motion to dismiss.  Even assuming that the re-offer was unreasonably rejected, Defendants would still be liable for the discriminatory termination and associated emotional distress it caused Shultz, an eleven-year employee who had been abruptly terminated because she was pregnant.  <u>See</u> <u>Jernigan v. Dalton Management Co., LLC</u>, 819 F. Supp. 2d 282, 292 (S.D.N.Y. 2011).

E.    **Shultz Rejected the Re-Offer Because It Was Not *Bona Fide* and Made in Good Faith and She Was Subject to Further Discrimination**

As of August 5, 2015, and thereafter, Shultz remained terminated and she was free to reject the offer if it was reasonable to do so under the circumstances, or the offer was not *bona fide* and made in good faith.  See, e.g., Miano v. AC&R Advertising Inc., 875 F. Supp. 204, 222-24 (S.D.N.Y. 1995) (citing cases); Wat Bey v. City of N.Y., 2013 WL 12082743 at * 28 (S.D.N.Y. 2013) (holding that reinstatement would not be appropriate given that Plaintiffs' own testimony at trial established that there was considerable hostility towards them at the workplace).

Here, Shultz alleges at least two grounds that support her reasonable rejection of the offer of re-employment.  First, the offer was not *bona fide* and made in good faith because it was a litigation tactic (based on the timing of the offer) and Defendants never altered course with respect to the work assigned to Shultz in connection with her termination.  (A-38-40).  Second, a critical component of Shultz's claims center on the fact that at no time subsequent to July 21, 2015 did Defendants cease their discriminatory animus towards her, but rather, they continued to conduct themselves in a manner entirely consistent with their intent to expel Shultz from the synagogue.  (Id.).  Thus, Shultz reasonably rejected the re-offer on that basis.  In any event, whether Shultz reasonably rejected the offer of re-employment or the offer was *bona fide* and made in good faith are

14

factual issues that should not be decided on a motion to dismiss. Moreover, even if the offer was unreasonably rejected, it would not result in dismissal of her claims.

## II. SHULTZ ALLEGED A CLAIM FOR CONSTRUCTIVE DISCHARGE AND HOSTILE WORK ENVIRONMENT

Shultz alleged ample facts in support of her alternative claim of adverse employment action by alleging that she was constructively discharged on August 14, 2015. Similar to the plaintiff in Green, Shultz is not alleging just that the Congregation discriminated against her – she claims that the discrimination left her no choice but to leave. See Green, 136 S. Ct. at 1779 ("Green is not alleging just that the Postal Service discriminated against him. He claims that the discrimination left him no choice but to resign"). The District Court also committed reversible error by failing to consider whether the allegations separately stated a hostile work environment claim under Title VII.

### A. Shultz's Hostile Work Environment With Aggravating Factors Supports A Constructive Discharge Claim

"A constructive discharge claim may be viewed as an aggravated case of hostile work environment." Early v. Wyeth Pharmaceuticals, Inc., 603 F. Supp. 2d 556, 582 (S.D.N.Y. 2009). Defendants isolate certain facts to argue that each standing alone is insufficient to support a constructive discharge or hostile work environment claim.[2] Defendants claim that there are *only three* allegations in

---

[2]    This approach is patently improper. See Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016) ("The district court erred when it failed to view [a

support of Shultz's constructive discharge and hostile work environment claims: (1) stray comments by Defendants concerning the litigation; (2) Shultz's subjective perception of future discrimination; and (3) Shultz being asked to complete her customary work assignment ahead of schedule. (Opp. Br. at 42). However, Shultz alleges numerous other facts, including that she was: (4) actually terminated because of her pregnancy; (5) was asked to sign an agreement releasing her claims and not speak ill of the Congregation; (5) her responsibilities were delegated to another employee; (6) after her termination was purportedly rescinded, Shultz heard Defendant Reiss say that the Congregation had a right to disapprove of her pregnancy; (7) Shultz's name was removed from the Congregation's newsletter and from outside the Congregation wall; and (8) Shultz would be required to report to the same individuals who discriminated against her. (A-35-39).

Significantly, Shultz's belief that she would continue to face discrimination was reasonable based on: (1) Defendant Soloveichik's and Lustig's contemptuous demeanor towards Shultz at the termination meeting;[3] (2) Defendants' failure to address Shultz's claims of discrimination; and (3) despite purportedly rescinding termination, Defendant Reiss continuing to instruct Shultz to complete the same

plaintiff's] evidence as a whole and instead set aside each piece of evidence after deeming it insufficient . . . .").

[3]    On a motion to dismiss, Rabbi Soloveichik's and Lustig's silence and refusal to look at Shultz cannot be considered benign, as Defendants contend.

tasks that were assigned in connection with her departure, signaling to Shultz that Defendants were still preparing for her leave.  (A-35-40).[4]

The District Court failed to consider aggravating circumstances that raise Shultz's hostile work environment claim to the level of a constructive discharge, including, but not limited to: (1) the nature and effect of the discriminatory termination; (2) the status of the persons alleged to have engaged in discriminatory conduct; and (3) the failure to rebut the substance of Shultz's discrimination claims.

### 1.    Nature and Effect of the Discriminatory Termination

The Congregation's termination decision is highly relevant to the totality of the circumstances analysis for Shultz's hostile work environment and constructive discharge claims, and should – either standing alone or with the other allegations – be sufficient to state a claim.  See Redd v. N.Y. Div. of Parole, 678 F.3d 166, 176 (2d Cir 2012) (a hostile work environment claim "depends on the totality of the circumstances, viewed from the perspective of a reasonable person in the

---

[4]    The District Court noted that there was inconsistent public treatment of Shultz's employment status, but then discounted this fact because she was later included in the Congregation's newsletter.  (A-107).  But, Shultz alleged that she was added back into a newsletter in retaliation for, and in response to, commencing this action.  (A-43).  The District Court also never mentions the fact that Shultz's name remained removed from the list of names prominently displayed outside on the Congregation's building.  It further ignored the critical allegations showing that despite the re-offer letter on August 5, 2015, Defendants continued to treat Shultz as if she was terminated and her last day was scheduled for August 14, 2015.  (A-39-40).

17

plaintiff's position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target") (internal quotations and citation omitted).

In addition, the termination decision was made on the heels of Shultz disclosing she was pregnant – creating the strong inference that it was motived by her pregnancy. The District Court recognized at oral argument that Shultz has "a very good circumstantial case for an unlawful initial termination." (A-78). Yet, the District Court ignored this unlawful termination decision in connection with Shultz's constructive discharge claim, and her lesser-included hostile work environment claim. (A-107).

The District Court similarly discounted Defendants Soloveichik's and Lustig's conduct by erroneously finding that there were no facts to support the allegation that they disapproved of her. (A-107). This reasoning is irreconcilable with the District Court's recognition that there was "very good circumstantial case for an unlawful initial termination," and conflicts with Shultz's allegation that she overheard Defendant Reiss state they '"had a right' to disapprove" of her pregnancy. (A-38).

The District Court also failed to consider Shultz's reaction to the termination in evaluating Shultz's constructive discharge claim. (A-108). Specifically, Shultz was "shocked and saddened" after learning of her pending termination, as any

18

reasonable employee in her position would be. (A-36). Shultz was concerned that being pregnant and visibly showing would make it extremely difficult, if not impossible, to obtain a new job. (A-36). Instead of consoling Shultz in this difficult time, Defendants shunned her. (A-36, 38-39).

It was error for the District Court to not consider the discriminatory termination decision as part of the totality of the circumstances supporting a constructive discharge and hostile work environment claim. In fact, standing alone, the egregious discriminatory termination decision should be sufficient to establish a hostile work environment. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace."); Williams v. N.Y. City Hous. Auth., 154 F. Supp. 2d 820, 826 (S.D.N.Y. 2001) (holding that "even though there may not have been a large number of isolated remarks or actions, the severity of the conduct at issue, if proven, would be sufficient to establish a hostile work environment" and "in the end, it is the province of a properly instructed jury to decide whether the conduct in this case was severe or pervasive enough to support plaintiffs' hostile work environment claim.").

### 2.    Status of the Discriminatory Actors

The Supreme Court has recognized that "acts of supervisors have greater power to alter the environment than acts of co-employees generally." Faragher v. City of Boca Raton, 524 U.S. 775, 805 (1998). Indeed, "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998). The District Court ignored the fact that the individuals who fired her and engaged in additional discrimination were Shultz's immediate supervisors and the highest-level executives at the Congregation, not mere co-workers. (A-39). These executives controlled the terms and conditions of Shultz's employment and Shultz would be expected to interact with them regularly. (A-32; A-39).

### 3.    Defendants Ignored Shultz's Discrimination Claims

The effect of Defendants' discrimination is more pronounced because Defendants ignored the substance of Shultz's discrimination and offered a pre-textual reason for their offer to re-employ. (See A-78).[5]

Based on Defendants' actions, and its failure to rebut the claims of discrimination, a reasonable employee could conclude that "the handwriting was on the wall and the axe was about to fall." Laster v. City of Kalamazoo, 746 F.3d

---

[5]    The Congregation did not submit an opposition to Shultz's motion requesting that this Court take judicial notice of the Unemployment Insurance Appeal Board Decision, which found that the Defendants had an opportunity to clarify any misconception or disabuse Shultz's claim of discrimination, but chose not to do so.

714, 728 (6th Cir. 2014) (quoting <u>EEOC v. Univ. of Chicago Hosp.</u>, 275 F.3d 326, 332 (7th Cir. 2002).

Shultz was not required to establish a *prima facie* case of discrimination in her complaint. As held in <u>Green</u>, even on a motion for summary judgment, Title VII does not require that an employee "come forward with proof – proof that would often be difficult to allege plausibly – that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along." <u>Id.</u> at 1780. Contrary to this directive, the District Court held Shultz to an untenable standard at the motion to dismiss stage and failed to consider all the allegations in the context of Shultz's employment.

### 4. Claims for Hostile Work Environment or Constructive Discharge Should Be Determined On a Case By Case Basis

Defendants cite several cases where a court did not find a hostile work environment or constructive discharge claim, and argues that Shultz's claim "falls woefully short of the above-referenced standard." (Opp. Br. at 42). As this Court has cautioned,

> [T]he fact that such actions did not constitute a hostile work environment in [one plaintiff's] case, when considered as part of all the circumstances there, does not establish a rule that similar actions in another context would not, as a matter of law, amount to one. **These determinations are to be made on a case by case basis considering all the individual facts at hand.**

21

Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 607 (2d Cir. 2006) (emphasis added). Defendants failed to follow this Court's warning.[6]

Although Defendants include cases in support of its argument, again, the cited decisions involve facts wholly distinguishable from this case and almost all were decided at the summary judgment phase. For example, the Congregation cites Ardigo v. J. Christopher Capital, LLC, 12-cv-3627, 2013 WL 1195117 at *5 (S.D.N.Y. Mar. 25, 2013) for the "holding that plaintiff's allegation that he "overheard three mildly offensive statements[,]. . . is not sufficient . . . to state a plausible hostile work environment claim." In contrast to the facts alleged by Shultz, the comments in Ardigo were not directed to the plaintiff and were spread out over months. Specifically, two of the comments were positive stereotypical attributes of gay men (productive and trustworthy) and the third was an ambiguous question from one employee to another about introducing another gay man. Id. at *1. Here, the allegations are much worse, including the fact that the Congregation terminated Shultz because she was pregnant, shunned and disparaged her and did nothing to rebut her discrimination claims.

Defendants cite Chin v. New York City Hous. Auth., 106 A.D.3d 443, 444 (1st Dept. 2013) for its "holding that allegations by an employee that she was

---

[6]     We distinguished the cases cited by the District Court in the moving brief. (Appellant's Brief at 35-36). Defendants do not address these cases in their opposition.

'variously yelled at, subjected to the occasional offensive remark, required to perform what she regarded as undesirable clerical tasks, . . . and [being] overworked and subjected to excessive scrutiny' were insufficient to justify a hostile work environment or retaliation claim." (Opp. Br. at 41). <u>Chin</u> was decided at the summary judgment stage and the evidence in support of the claim was spread out "during a period spanning at least six years." <u>Chin</u>, 106 A.D.3d at 444. Unlike this action, the court reasoned that there was no evidence to support "that discrimination was one of the motivating factors for the defendants' conduct." <u>Id.</u> Shultz alleges multiple facts showing the basis for her claim that the Congregation acted with discriminatory animus.

Similarly, the other cases cited by the Congregation on this issue are not persuasive, including: <u>Cooper v. Wyeth Ayerst Lederle</u>, 106 F. Supp. 2d 479 (S.D.N.Y. 2000) (summary judgment decision where court held no constructive discharge where plaintiff failed "to explore alternative avenues offered by her employer before concluding that resignation [was] the only option."); <u>Nugent v. St. Luke's/Roosevelt Hosp. Ctr.</u>, 05-cv-5109, 2007 WL 1149979 (S.D.N.Y. Apr. 18, 2007) (summary judgment decision where court held no constructive discharge where plaintiff admitted to committing the infractions for which she was disciplined and given new responsibilities that plaintiff considered an "upgrade" and "liked a lot."); <u>Spence v. Maryland Casualty Co.</u>, 995 F.2d 1147 (2d Cir. 1993)

(summary judgment decision where court held no constructive discharge where "plaintiff was told, six months prior to his resignation, that he had come close to being fired but that he 'would not be fired or reassigned'" and remainder of his employment was "uneventful."); Drake v. Minnesota Min. and Mfg. Co., 134 F.3d 878, 882 (7th Cir. 1998) (summary judgment decision where court held that there is "no constructive discharge where plaintiff alleged that no one at work would talk to him and that co-workers would leave the [break] room when he entered," after filing a grievance against a co-worker); Etienne v. Wal-Mart Stores, Inc., 186 F. Supp. 2d 129 (D. Conn. 2001) (summary judgment decision where court held no constructive discharge where plaintiff was treated coldly after prevailing on a labor dispute and her former colleagues would not speak or look at her" after she was accused of stealing); Munday v. Waste Management of North America, Inc., 126 F.3d 239 (4th Cir. 1997), cert. denied, 522 U.S. 1116 (1998) (decision after trial holding that there is no constructive discharge when plaintiff was ignored by co-workers" since plaintiff never complained).

### B. At A Minimum, Shultz Alleged A Hostile Work Environment

The District Court erred by dismissing Shultz's Title VII claim because, at the minimum, Shultz alleged a hostile work environment. A hostile work environment has long been recognized as a "form of proscribed discrimination." Vance v. Ball State Univ., 133 S. Ct. 2434, 2455 (2013). Despite the District

Court being on notice that a hostile work environment claim is considered a "lesser included component" of the "graver claim of hostile-environment constructive discharge," it improperly dismissed Shultz's Title VII claims without considering whether she pled a hostile work environment claim. Pennsylvania State Police v. Suders, 542 U.S. 129, 149 (2004). Thus, at a minimum, this Court should reverse the Order and find that Shultz plead a hostile work environment.

### 1. Shultz's Work Environment Was Altered for the Worse Because of Her Pregnancy

The conduct underlying a hostile work environment claim "need not drive the victim from her job, but it must be of such severity or pervasiveness as to pollute the working environment, thereby 'altering the conditions of the victim's employment.'" Vance v. Ball State Univ., 133 S. Ct at 2455 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21–22 (1993)). Shultz's work environment was undeniably "altered for the worse" after disclosing her pregnancy. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000).

Defendants fail to make any substantive arguments in opposition to Shultz's hostile work environment claim, and instead, refer to their arguments concerning Shultz's constructive discharge claim. (Opp. Br. at 39 n.10). While this Court should separately analyze Shultz's hostile work environment and constructive discharge claims for purposes of reversing the dismissal, the same allegations that

support Shultz's hostile work environment claim also support her constructive discharge claim.

The two cases that Defendants cite to support the dismissal of Shultz's hostile work environment claim are easily distinguishable. Defendants cite Mills v. S. Conn. State Univ., 519 F. App'x 73, 75 (2d Cir. 2013) for the proposition that "disparaging remarks and being 'shunned' by colleagues does not give rise to a hostile work environment claim." (Opp. Br. at 39). Mills was decided at the summary judgment phase, and the colleague's conduct was found by the district court to be "entirely appropriate or fairly innocuous behaviors," and most significantly, there was no evidence to support the assertion that the conduct was based on the plaintiff's gender. See Mills v. S. Conn. State Univ., 08-cv-1270, 2011 WL 3490027, at *13 (D. Conn. Aug. 10, 2011). Here, Shultz's high-level supervisors engaged in the discriminatory conduct, which included terminating Shultz because of her pregnancy and then shunning her while she continued to work at the Congregation.

Defendants also cite Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) for the proposition that "changes in job assignments do not typically give rise to a claim under Title VII." (Opp. Br. at 39). Potash was decided at the summary judgment stage and the part of the decision to which Defendants cite involved whether a change in job assignments alone constituted an

26

adverse employment action. Here, Shultz does not allege that the changes to her job responsibilities alone created a hostile work environment, but rather when considered in context of the totality of the circumstances, her work environment was altered for the worse to the point that a reasonable person in her position would feel compelled to resign.

### 2. Shultz's Hostile Work Environment Claim Was Raised Before the District Court and Should Be Decided In This Appeal

Despite the many facts set forth above, the Congregation claims it is "truly astonishing" that Shultz argues in her appellate brief that "she has stated a viable 'hostile work environment' claim" because it was not asserted below. (Opp. at 38). However, the Congregation was aware of such claims because they were argued at oral argument on the motion. Specifically, at oral argument, the Congregation's counsel argued that, "set[ting] aside constructive discharge," the allegations were "insufficient to state [a hostile work environment claim]" under the "lower standard." (A-65).

This Court has discretion to consider issues that were raised, briefed, and argued in the District Court, but that were not reached there." Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 418–19 (2d Cir. 2001).[7] This Court will exercise

---

[7] This discretion exists even if this Court finds that Shultz is raising her hostile work environment claim for the first time on appeal. See Baker v. Dorfman, 239 F.3d 415, 420–21 (2d Cir. 2000).

this discretion if not addressing the issue would result in "a substantial injustice" or the issue is a "purely legal issue." Id.

Here, it is obvious that Shultz was advancing a hostile work environment claim because she argued that the allegations met the *higher* constructive discharge standard. The District Court was aware of this overlap since it cited cases in its order recognizing that a hostile work environment was a component of a constructive discharge claim. (A-106). Given these circumstances, a substantial injustice would result if this Court upheld the dismissal of Shultz's constructive discharge claim without considering whether the allegations support the lesser-included hostile work environment claim. Additionally, "[e]valuating the sufficiency of a complaint is a question of law that is "well within an appellate court's core competency." Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009).

## III. THE CONGREGATION RETALIATED AGAINST SHULTZ BY ENGAGING IN A CAMPAIGN TO DISCREDIT HER

"Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556 (2d Cir. 2011) (recognizing that the context of plaintiff's work environment was significant); Hicks v. Baines, 593 F. 3d 159 (2d Cir. 2010). Here, Shultz's complaint about her discriminatory termination resulted in a campaign to discredit Shultz through: (1) a statement to the Congregation

28

members that Shultz remained employed (when in fact she stopped working) and that her claims were "fabricated"; (2) internal statements to employees that Shultz was on leave and not to contact her (when in fact she was not on leave and welcomed communication from her non-discriminatory co-workers); (3) included Shultz on the Congregation website and newsletters (to keep up the public image that she remained employed); (4) emailed and passed out to Congregation members a newsletter that congratulated "Program Director, Alana Shultz" on the birth of her child (again, to further discredit Shultz's claims of discrimination); and (5) impeded Shultz's attempts to collect unemployment benefits by claiming she was a current employee. (A-41-42). Considered in the aggregate, the Congregation's actions are not those types of "petty slights or minor annoyances that often take place at work and that all employees experience." (A-110). Instead, this public campaign to discredit Shultz could "well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks, 593 F. 3d at 165.

The above retaliation must also be taken in context with the actions that Defendants took between August 5, 2015 and August 14, 2015, none of which are addressed by Defendants. For example, the Congregation purportedly rescinded the termination in an attempt to mitigate their damages and discredit any claim that Shultz would make that she was terminated. (A-38-40). Further, Defendants do

29

not rebut Shultz's argument that sullying an employee's reputation is actionable retaliation. (Opp. Br. at 39); see Wanamaker v. Columbian Rope Co., 108 F.3d 462 (2d Cir. 1995) (recognizing that a "terminated employee . . . may have tangible future employment objectives, for which he must maintain a wholesome reputation" and may have a retaliation claim where the employer "sullies the plaintiff's reputation").[8] Thus, the dismissal of Shultz's retaliation claim should be reversed.

## CONCLUSION

For the foregoing reasons, and those stated in the moving brief, Plaintiff-Appellant Shultz respectfully requests that this Court reverse the District Court's decision granting dismissal in its entirety.

Dated:  March 10, 2017          Respectfully submitted,
        New York, New York

                                **WIGDOR LLP**

                                By: /s/Jeanne M. Christensen
                                    Jeanne M. Christensen
                                    Bryan L. Arbeit

                                85 Fifth Avenue
                                New York, New York 10003
                                Telephone: (212) 257-6800
                                jchristensen@wigdorlaw.com
                                barbeit@wigdorlaw.com

                                *Counsel for Plaintiff-Appellant*

---

[8]     If Shultz's discrimination claims are reversed, then her FMLA claim should also be reversed. (See Opp. Br. at 47).

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)

1.   This brief complies with the type-volume limitation of Fed. R. App. P.

     32(a)(7)(B). It contains 6,956 words, excluding the parts of the brief exempted

     by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

     and the type style requirements of Fed. R. App. P. 32(a)(6). It has been

     prepared in a proportionally spaced typeface using Microsoft Word 2013 in

     14 Point Times New Roman.

Dated: March 10, 2017